United States District Court
Western District of Texas
Waco Division

| | |
|---|---|
| Affinity Labs of Texas, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 15-30 |
| v. ) | |
| ) | **Jury Trial Demanded** |
| DIRECTV, LLC; ) | |
| DIRECTV Digital LLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## Complaint for Patent Infringement

Plaintiff Affinity Labs of Texas, LLC (Affinity Labs) files this Complaint against Defendants, DIRECTV, LLC and DIRECTV Digital LLC (collectively, DIRECTV) and alleges as follows:

### Parties

1.  Plaintiff Affinity Labs is a Texas limited liability company having offices at 31884 RR 12, Dripping Springs, TX 78620.

2.  Defendant DIRECTV, LLC is a California limited liability company with its principal place of business in El Segundo, CA. DIRECTV, LLC is registered to do business and actively engaged in business within the State of Texas. DIRECTV, LLC maintains an agent for service of process at Corporation Service Company, dba, CSC Lawyers Inco., 211 E. 7th Street, Suite 620, Austin, TX 78701.

3.      Defendant DIRECTV Digital LLC is a Delaware limited liability company with its principal place of business in El Segundo, CA. DIRECTV Digital LLC is actively engaged in business within the State of Texas.

## Jurisdiction

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the federal patent statutes, 35 U.S.C. §§ 271 and 281-285.

5.      This Court has general and specific personal jurisdiction over DIRECTV. DIRECTV has committed and continues to commit acts giving rise to this action within Texas and within this judicial district and DIRECTV has established minimum contacts within the forum such that the exercise of jurisdiction over DIRECTV would not offend traditional notions of fair play and substantial justice. For example, DIRECTV has committed to and continues to commit acts of patent infringement in this judicial district, as set forth below. In conducting its business in Texas and this judicial district, DIRECTV derives substantial revenue from its patent infringement.

## Venue

6.      Venue in the Western District of Texas is proper pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(b) because DIRECTV has committed acts within this judicial district giving rise to this action, and DIRECTV has and continues to conduct business in this judicial district, including one or more acts of making, using, selling, and/or offering for sale a broadcast system that constitutes patent infringement in this judicial district.

7.      Venue in the Western District of Texas is also proper because Affinity Labs is headquartered in this judicial district in Dripping Springs, Texas.

8. Venue in the Western District of Texas is also proper because the majority of Affinity Labs' documents and relevant evidence is located at Affinity Labs' headquarters within this judicial district and numerous witnesses are also located within this judicial district.

9. Venue in the Western District of Texas is also proper because Affinity Labs is organized and governed by the limited liability company laws of Texas and is subject to taxes in Texas. Affinity Labs maintains a registered agent for service of process in Texas.

10. Venue in the Western District of Texas is also proper because of judicial economy. The Honorable Judge Walter S. Smith, Jr. in this judicial district is currently presiding over *Affinity Labs of Texas, LLC v. Bosch, LLC*, C.A. No. 6:14-cv-00396, which involves two other Affinity Labs patents in the same patent family as the Asserted Patent in this matter, United States Patent Nos. 8,554,191 (the '191 patent) and 8,588,680 (the '680 patent). Moreover, Magistrate Judge Jeffrey Manske in this judicial district presided over the following seven Affinity Labs matters, which also involved the '191 and '680 patents: *Affinity Labs of Texas, LLC v. Ford Motor Company*, C.A. No. 6:13-cv-00363; *Affinity Labs of Texas, Inc. v. General Motors*, C.A. No. 6:13-cv-00379; *Affinity Labs of Texas, Inc. v. Nissan*, C.A. No. 6:13-cv-00369; *Affinity Labs of Texas, Inc. v. Toyota*, C.A. No. 6:13-cv-00365; *Affinity Labs of Texas, Inc. v. Honda*, C.A. No. 6:13-cv-00367; *Affinity Labs of Texas, Inc. v. Jaguar*, C.A. No. 6:13-cv-00368; and *Affinity Labs of Texas, Inc. v. Volvo*, C.A. No. 6:13-cv-00366.

### Background

11. Affinity Labs was founded in 2008 by Russell White and Harlie Frost.

12. Russell White is a successful entrepreneur and patent attorney. Mr. White grew up in Houston, Texas, and has an undergraduate degree in mechanical engineering

from Texas A&M. Mr. White also graduated from the University of Temple Law School. After earning his law degree, Mr. White co-founded SBC Knowledge Ventures, an entity within AT&T.

13. Mr. White is also a prolific inventor. Mr. White is listed as an inventor on at least thirty-two separate United States patents.

14. On March 28, 2000, Mr. White and Kevin R. Imes filed a detailed patent application, No. 09/537,812 (the '812 application) with the United States Patent and Trademark Office (PTO).

15. The '812 application broadly addressed the problem of accessing, managing, and communicating digital audio and video content. In doing so, the '812 application disclosed a number of inventions relating to creating a new media ecosystem with a portable electronic audio device, such as a smartphone, at its center.

16. The '812 application also disclosed the ability to access regionally-broadcast content on a wireless handheld device even when the user and the wireless handheld device were located outside of the range for the regional broadcast.

17. On June 28, 2011, the PTO issued the '379 patent. A copy of this patent is attached as Exhibit A. The '379 patent issued from a continuation application claiming priority to the '812 application, which was filed with the PTO on March 28, 2000. The '379 patent is presumed valid, and is valid.

18. The '379 patent and other patents in the same patent family, have been cited by major businesses in the computer, software, communications, automotive, and mobile industries.

19. Numerous other companies have recognized the value and importance of Affinity Labs' innovation. For instance, twenty-eight companies have licensed Affinity Labs' patent portfolio for the patents in the same family as the Asserted Patent.

20. DIRECTV does not have a license to the '379 patent or any patent in Affinity Labs' patent portfolio.

## Count I
## Infringement of U.S. Patent No. 7,970,379 by DIRECTV

21. Affinity Labs restates and realleges each of the allegations set forth above and incorporates them herein.

22. Affinity Labs holds all legal title, interest, and rights in the '379 patent.

23. DIRECTV does not have authority to make, use, sell, or offer for sale any system covered by any claim of the '379 patent.

24. DIRECTV has and continues to manufacture, use, sell, and offer to sell, without authority, a broadcast system that includes the NFL Sunday Ticket application and the NFL Sunday Ticket service.

25. DIRECTV controls, maintains, and uses a broadcast system that includes streaming content of NFL games to subscribers and end users of the NFL Sunday Ticket service.

26. End users and subscribers to NFL Sunday Ticket service have access to NFL games on wireless handheld devices via the NFL Sunday Ticket application.

27. DIRECTV uses and controls a broadcast system to stream and deliver NFL games to its subscribers and end users.

28. As part of its broadcast system, DIRECTV maintains a network-based resource, such as a server and electronics infrastructure.

29. DIRECTV's network-based resource maintains information regarding regionally broadcast NFL games.

30. DIRECTV's network-based resource includes the capability of allowing its subscribers and end users to select among regionally broadcast NFL games. According to DIRECTV, subscribers can "stream any Sunday game LIVE on any device" and watch "every minute of every out-of-market game, every Sunday, All in HD." The live games include regular season out-of-market games.

31. DIRECTV's network-based resource includes the capability of allowing its subscribers and end users to select among regionally broadcast—or, in other words, "out-of-market"—NFL games.

32. DIRECTV's network-based resource includes the capability of streaming regionally broadcast NFL games to a wireless handheld device.

33. The broadcast system that includes the NFL Sunday Ticket application and NFL Sunday Ticket service allows end users and subscribers to stream NFL games for viewing on the end users' and subscribers' wireless handheld device.

34. DIRECTV's broadcast system also includes a non-transitory storage medium on which it maintains the NFL Sunday Ticket application. Upon a request from a user of a wireless handheld device such as a smartphone or tablet, this NFL Sunday Ticket application can be downloaded from DIRECTV's non-transitory storage medium to the wireless handheld device for execution.

35. The NFL Sunday Ticket application is configured for execution on a wireless handheld device.

36. The NFL Sunday Ticket application is configured to enable a wireless handheld device to transmit a request for a regionally broadcast NFL game from the wireless handheld device.

37. The NFL Sunday Ticket application is configured to enable a wireless handheld device to receive a streaming signal of a regionally broadcast NFL game on the wireless device, even when the wireless handheld device is outside of the region of the regionally broadcast NFL game.

38. In violation of 35 U.S.C. § 271(a), DIRECTV has infringed, and if not enjoined, will continue to infringe the '379 patent by manufacturing, using, selling, and offering for sale, without authority, a broadcast system that includes the NFL Sunday Ticket application and NFL Sunday Ticket service that is covered by one or more claims of the '379 patent, literally and/or under the doctrine of equivalents, in this judicial district and elsewhere in the United States.

39. For example, DIRECTV directly infringes at least claims 1, 7, and 10-13 of the '379 patent at least by having and continuing to make, use, sell, and offer for sale a broadcast system that includes the NFL Sunday Ticket application and NFL Sunday Ticket service.

40. DIRECTV has known of the '379 patent since at least early April 2013. For instance, on April 29, 2013, Mr. Frost, President of Affinity Labs, wrote three letters to the following individuals at DIRECTV: Executive Vice President and General Counsel, Larry D. Hunter; Executive Vice President and Chief Technology Officer, Romulo Pontual; and Chairman, President, and Chief Executive Officer, Michael White. In those letters, Mr. Frost identified the '379 patent to DIRECTV.

41. On June 4, 2013, Chris Hivick, Assistant General Counsel from DIRECTV responded to Mr. Frost's letter to Mr. Hunter, informing Mr. Frost that DIRECTV was conducting a review regarding one of the patents in Affinity Labs' patent portfolio. But he provided no further response.

42. On September 25, 2013, Mr. Frost wrote again to Mr. Hivick about a license for DIRECTV to Affinity Labs' portfolio. Affinity Labs did not hear back from anyone at DIRECTV.

43. On October 24, 2014, counsel for Affinity Labs again wrote to Mr. Hivick, copying DIRECTV's Vice President and Associate General Counsel, Intellectual Property, Ronald Coslick. In that letter, counsel for Affinity Labs specifically identified DIRECTV's infringement of the '379 patent. Affinity Labs did not hear back from anyone at DIRECTV.

44. Despite Affinity Labs' written notice of DIRECTV's infringement, DIRECTV has never taken a license to the '379 patent.

45. Despite Affinity Labs' written notice of infringement of the '379 patent, DIRECTV has not stopped its infringement. Instead, DIRECTV continues to make, use, sell, and offer for sale its broadcast system that includes the NFL Sunday Ticket application and NFL Sunday Ticket service that infringes the '379 patent.

46. DIRECTV's infringement of the '379 patent has been and is willful because DIRECTV has known of the '379 patent, knew or was at least reckless with respect to its infringement of the '379 patent, and yet continues to offer the NFL Sunday Ticket application and NFL Sunday Ticket service in at least reckless disregard of Affinity Labs' patent rights.

47. In violation of 35 U.S.C. § 271(b), DIRECTV has indirectly infringed one or more claims of the '379 patent by inducing others (e.g., its subscribers and end users) to directly infringe the '379 patent at least by using the NFL Sunday Ticket application and NFL Sunday Ticket service in this judicial district and elsewhere in the United States.

48. DIRECTV knowingly encouraged and intended—and continues to encourage and intend—for subscribers and end users to directly infringe the '379 patent, including at least claims 1, 7, and 10-13 by instructing and advertising that end users and subscribers stream NFL games for viewing on a wireless handheld device. DIRECTV intended these actions by end users and subscribers while the '379 patent is in force.

49. DIRECTV knew of the '379 patent and knew that its instructions and encouragement, and its continued instruction and encouragement, have and will continue to result in infringement of the '379 patent. DIRECTV specifically intended to induce subscribers and end users to directly infringe the '379 patent when they used the NFL Sunday Ticket application and NFL Sunday Ticket service.

50. Alternatively, DIRECTV knew that there was a high probability that the acts by subscribers and end users would infringe the '379 patent by using the NFL Sunday Ticket application and NFL Sunday Ticket service, but took deliberate steps to avoid learning of that infringement.

51. In violation of 35 U.S.C. § 271(c), DIRECTV actively contributes to the infringement and actively continues to commit such contributory infringement of the '379 patent in this judicial district and elsewhere.

52. DIRECTV has made, used, and offered, and continues to make, use, and offer the NFL Sunday Ticket application to work with NFL Sunday Ticket service and has and continue to do so while the '379 patent is in force.

53. DIRECTV made, used, and offered, and continues to make, use, and offer at least components for the products such as the NFL Sunday Ticket application to work with the NFL Sunday Ticket service that infringe the '379 patent, and for which no other substantial non-infringing uses exist. In addition, DIRECTV has made, used, and offered, and continues to make, use, and offer at least a broadcast system that streams NFL games to subscribers and end users. This component of the broadcast system infringes the '379 patent when it is used by subscribers and end users in connection with the NFL Sunday Ticket application, and for which no other substantial non-infringing uses exist. These components include a material part of the claimed inventions of the '379 patent.

54. DIRECTV has known that these components are used by its end users and subscribers in a manner that infringes the '379 patent, and continues to offer these components for such use and infringement. Alternatively, DIRECTV knew that there was a high probability that the acts by its subscribers and end users would infringe the '379 patent but took deliberate steps to avoid learning of that infringement.

55. DIRECTV does not have a license or permission to use the claimed subject matter in the '379 patent.

56. Affinity Labs has been injured and has been caused significant financial damage as a direct and proximate result of DIRECTV's infringement of the '379 patent.

57. DIRECTV will continue to infringe the '379 patent, and thus cause irreparable injury and damage to Affinity Labs unless enjoined by this Court.

58. Affinity Labs is entitled to recover from DIRECTV the damages sustained by Affinity Labs as a result of DIRECTV's wrongful acts in an amount subject to proof at trial.

## Demand for Trial by Jury

Affinity Labs demands a jury trial on all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## Prayer for Relief

Affinity Labs prays for the following relief:

1. A declaration that DIRECTV has infringed and is infringing the '379 patent and is liable to Affinity Labs for infringement;

2. An order enjoining DIRECTV from infringing the '379 patent;

3. If a permanent injunction is not granted, a judicial determination of the conditions for future infringement such as an ongoing royalty;

4. An award of damages, including pre-judgment and post-judgment interest, in an amount adequate to compensate Affinity Labs for DIRECTV's infringement of the '379 patent, and that the damages be trebled pursuant to 35 U.S.C. § 284;

5. An equitable accounting of damages owed by DIRECTV for the period of infringement of the '379 patent, following the period of damages established by Affinity Labs at trial;

6. A finding that this case is exceptional and an award of attorneys' fees pursuant to 35 U.S.C. § 285;

7. An award of costs, expenses, and disbursements; and

8. Such other and further relief as the Court deems Affinity Labs may be entitled to in law and equity.

Dated: February 3, 2015

Respectfully submitted,

By: /s/ *John P. Palmer*

**Naman Howell Smith & Lee, PLLC**
John P. Palmer (State Bar No. 15430600)
P.O. Box 1470
Waco, TX 76703-1470
(254) 755-4100
Fax: (254) 754-6331
palmer@namanhowell.com

**Robins Kaplan LLP**
Ronald J. Schutz (MN Bar No. 130849)
(*pro hac vice to be submitted*)
Cyrus A. Morton (MN Bar No. 287325)
(*pro hac vice to be submitted*)
Patrick M. Arenz (MN Bar No. 386537)
(*pro hac vice to be submitted*)
Daniel R. Burgess (MN Bar No. 389976)
(*pro hac vice to be submitted*)
Shira T. Shapiro (MN Bar No. 390508)
(*pro hac vice to be submitted*)
Kristine A. Tietz (MN Bar No. 393477)
(*pro hac vice to be submitted*)
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181
RSchutz@robinskaplan.com
CMorton@robinskaplan.com
PArenz@robinskaplan.com
DBurgess@robinskaplan.com
SShapiro@robinskaplan.com
KTietz@robinskaplan.com

**Attorneys for Plaintiff**
**Affinity Labs of Texas, LLC**

## Certificate of Service

I hereby certify that on February 3, 2015, I caused a true and correct copy of this document (Complaint for Patent Infringement) to be served on all counsel of record via Electronic Case Filing (ECF) pursuant to Local Rule CV-5.

Dated: February 3, 2015                             /s/ *John P. Palmer*
                                                    John Palmer