**United States District Court**
**Western District of Texas**
**Waco Division**

| | | |
|---|---|---|
| Affinity Labs of Texas, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 6:15-cv-00030-WSS-JCM |
| vs. | ) | |
| | ) | |
| DIRECTV, LLC; | ) | **Jury Trial Demanded** |
| DIRECTV Digital LLC | ) | |
| | ) | |
| Defendants. | ) | |
| Affinity Labs of Texas, LLC, | ) | |
| | ) | Case No. 6:15-cv-00031-WSS-JCM |
| Plaintiff, | ) | |
| | ) | Consolidated with |
| vs. | ) | 6:15-cv-00030-WSS-JCM |
| | ) | |
| NBA Ventures, LLC; | ) | **Jury Trial Demanded** |
| Turner Digital Basketball Services, Inc. | ) | |
| | ) | |
| Defendants. | ) | |
| Affinity Labs of Texas, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 6:15-cv-00032-WSS-JCM |
| | ) | |
| vs. | ) | Consolidated with |
| | ) | 6:15-cv-00030-WSS-JCM |
| NHL Enterprises, L.P.; | ) | |
| NHL Enterprises, Inc.; | ) | **Jury Trial Demanded** |
| NHL Interactive CyberEnterprises, LLC | ) | |
| | ) | |
| Defendants. | ) | |
| Affinity Labs of Texas, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 6:15-cv-00033-WSS-JCM |
| | ) | |
| vs. | ) | Consolidated with |
| | ) | 6:15-cv-00030-WSS-JCM |
| MLB Advanced Media, L.P.; | ) | |
| MLB Advanced Media, Inc. | ) | **Jury Trial Demanded** |
| | ) | |
| Defendants. | ) | |

**<u>Affinity Labs' Opposition to Defendants' Motion to Transfer Venue</u>**

**Introduction**

Affinity Labs had a choice in where to bring this action. Both the Waco and Austin

Divisions had previously overseen Affinity Labs' lawsuits involving patents in the same family

as the patent that forms the basis of this action. Both the Waco and Austin Divisions had

developed a familiarity with the technology at issue in this case, and with particularized issues

that will be relevant to this litigation. Both Waco and Austin are in easy driving distance of

Affinity Labs' headquarters in Dripping Springs. In the end, Affinity Labs chose to file suit in

this Court because it has a track record of resolving patent cases quickly and efficiently.

Defendants cannot overturn Affinity Labs' choice unless they can show that Austin is a "clearly

more convenient" forum for this dispute to be heard than Waco. And given that Defendants have

not even attempted to articulate any inconvenience that any of them will suffer from trial in

Waco that they will not also suffer from a trial in Austin, it is clear that the purpose of their

motion is to seek a venue that will delay trial for up to a couple years. This is not a grounds for

transfer, and Defendants have not met their burden. Affinity Labs' choice of venue should be

respected, and Defendants' motion should be denied.

**Factual Background**

**I.    This suit involves a Western District of Texas plaintiff and four defendants located primarily outside of Texas.**

Affinity Labs started this litigation on February 3, 2015, when it filed four separate but

related complaints against the defendants for infringement of United States Patent No. 7,970,379

("the '379 patent") in this Court. Affinity Labs is a Texas company located in Dripping Springs.

In 2000, Russell White, along with his co-inventor Kevin Imes, filed a robust specification

covering numerous aspects of a digital media ecosystem with the U.S. Patent & Trademark Office. From that specification, the PTO has issued more than a dozen patents to Affinity Labs, including the '379 patent asserted in the present case, as well as United States Patent Nos. 8,588,680 ("the '680 patent") and 8,554,191 ("the '191 patent"), which were the subjects of prior litigation involving Affinity Labs in this Court.

The four groups of defendants who have brought this motion are not based in Waco, Austin, or the State of Texas. Their principal places of business are in New York and New Jersey (NBA, MLB, and NHL), Atlanta (Turner), and El Segundo, California (DirecTV). Thus, they will defend this litigation outside of Texas regardless of whether these cases proceed in Waco or Austin.

## II.   The Austin Division has presided over one case involving the '379 patent.

Affinity Labs has engaged in multiple rounds of patent litigation related to patents in the same family as, and sharing the same specification as, the patent-in-suit. Only two of these rounds of litigation are relevant to the present motion. The first of these rounds of litigation occurred in 2012, when Affinity Labs—represented by a different law firm—filed suit against Clear Channel Broadcasting, Inc. for infringement of the '379 patent. The case was assigned to Judge Yeakel, who set a standard schedule for the Austin Division. Under this schedule, the Court first dealt with issues of claim construction, during which all discovery in the case was stayed. The timeline below sets forth the relevant events in the *Clear Channel* case:

**March 6, 2012**        Affinity Labs files suit against Clear Channel for patent infringement

**May 21, 2012**         Clear Channel files its answer to Affinity Labs' complaint

**May 22, 2012**         Judge Yeakel issues order *sua sponte* staying the case and setting an
                         Initial Pretrial Conference on July 20, 2012

**July 27, 2012**        Judge Yeakel issues order unstaying case for purposes of claim

construction.

**January 18, 2013**      Affinity Labs and Clear Channel file opening claim construction briefs

**February 22, 2013**     Judge Yeakel holds Markman Hearing

**April 14, 2014**        Affinity Labs files motion to lift stay and begin fact discovery

**April 28-29, 2014**     Judge Yeakel issues Order on Claim Construction and lifts stay on fact discovery

**June 12, 2014**         Judge Yeakel holds post-Markman Scheduling Conference and issues Scheduling Order setting trial for July 20, 2015

**December 30, 2014**     Affinity Labs files motion to dismiss pursuant to a settlement agreement with Clear Channel

*See* Ex. 1.

As is clear from the timeline above, approximately a year passed between the time that Affinity Labs filed suit and the time that the Austin court held a claim construction hearing. Another 13 months elapsed before the Austin court issued a claim construction order. The Austin court never ruled on any *Daubert* or summary judgment motions, and the parties settled not long after a claim construction order was issued, and fact discovery began.

**III.   This Court presided over and resolved seven cases last year for patents sharing the same specification as the '379 patent.**

While Affinity Labs and Clear Channel were proceeding with litigation in Austin, Affinity Labs filed a number of suits alleging infringement of two additional patents sharing the same specification as the patent-in-suit: the '640 and '191 patents. On November 21, 2013, Affinity Labs filed suit against Ford (Case No. 6:13-cv-363), Toyota (Case No. 6:13-cv-365), Volvo (6:13-cv-366), Honda (Case No. 6:13-cv-367), Jaguar Land Rover (Case No. 6:13-cv-368), Nissan (Case No. 6:13-cv-369), and General Motors (Case No. 6:13-cv-370). This Court took an active role in ensuring the swift and efficient resolution of these cases. This Court set trial dates for each action, falling a little more than a year after the complaints were filed. *See* Ex. 2 (Dkt.

Nos. 55, 93, 189).[1] This Court held multiple hearings on discovery issues dealing with document

productions and infringement contentions. *See id.* (Dkt. Nos. 91, 94-95, 103). When the

defendants in those actions raised a license defense, this Court received detailed briefing from

the parties regarding the correct construction of Affinity Labs' license agreements with Apple

and others, and issued an order construing those license agreements on an expedited basis. *See*

*id.* (Dkt. Nos. 103, 143, 146, 153). This Court also actively participated in mediation between

Affinity Labs and defendants in these actions. *See id.* (Dkt. No. 209). Finally, this Court received

claim construction briefing regarding the disputed terms in the '680 and '191 patents, and was

about to conduct a claim construction hearing when the last case settled. *See id.* (Dkt. Nos. 172-

75, 181-82, 209). As a result of this Court's hands-on approach, all of Affinity Labs' lawsuits

against these seven defendant groups were resolved within a year of Affinity Labs filing its

complaints.[2]

## Argument

Under Supreme Court precedent, a plaintiff's venue selection is considered his or her

"venue privilege," and "plaintiffs are ordinarily allowed to select whatever forum they consider

most advantageous (consistent with jurisdictional and venue limitations)." *Atl. Marine Const.*

*Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581-82 (2013); *see also Norwood v.*

*Kirkpatrick*, 349 U.S. 29, 32 (1955). A party seeking to transfer a case under 28 U.S.C. § 1404(a)

---

[1]     Because these cases were consolidated for discovery, Exhibit 2—which is the civil docket
for the Ford case—contains all discovery-related docket entries for the various actions.

[2]     *See* Ex. 2, Dkt. No. 206 (Ford case dismissed pursuant to settlement agreement on October
9, 2014); Ex. 3, Dkt. No. 69 (Toyota case dismissed pursuant to settlement agreement on October
23, 2014); Ex. 4, Dkt. No. 55 (Volvo case dismissed pursuant to settlement agreement on July
31, 2014); Ex. 5, Dkt. No. 70 (Honda case dismissed pursuant to settlement agreement on
November 6, 2014); Ex. 6, Dkt. No. 62 (Jaguar case dismissed pursuant to settlement agreement
on August 25, 2014); Ex. 7, Dkt. No. 88 (Nissan case stayed pursuant to settlement agreement on
October 16, 2014); Ex. 8, Dkt. No. 69 (GM case dismissed pursuant to settlement agreement on
September 4, 2014)

bears the burden of showing that a transfer is necessary. The Fifth Circuit places a "significant" burden of proof upon the movant to "show good cause for the transfer." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). Because of this, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.*

As discussed below, Defendants have not shown that the Austin Division would be a "clearly more convenient" venue for this litigation. Waco and Austin will be equally convenient for the defendants, all of which are located far outside of Texas. Both the Waco and Austin Divisions of the Western District of Texas have relevant experience with the plaintiff and its patents, and both courts have specialized knowledge that would be helpful when overseeing this litigation. However, this case will proceed to trial far more quickly and efficiently in the Waco Division than it will in the Austin Division. Because of this Defendants cannot carry their burden, and their motion to transfer should be denied.

## I.   Defendants ignore this Court's experience with the family of Affinity Labs patents and Affinity's license agreements.

Defendants' primary argument in favor of transfer is that a transfer to Austin would serve the interests of judicial economy. And Defendants are correct that Judge Yeakel in Austin does have familiarity with the '379 patent, having issued a claim construction order in the *Clear Channel* litigation. However, Defendants' brief is notable because it makes no mention of the extensive experience that this Court has with the plaintiff, the technology at issue in the litigation, and with factual issues that will be relevant to the present litigation. As described in greater detail above, this Court has successfully overseen more than a half-dozen cases involving Affinity Labs patents with specifications identical to the specification of the '379 patent. This Court was an active participant in those litigations, deciding discovery disputes and issues

relating to infringement and invalidity contentions. This Court oversaw mediation involving

Affinity Labs and at least one defendant, and received detailed claim construction briefs from the

parties relating to the scope of the invention described in the specification at issue in this case.

Most importantly, however, this Court presided over the construction of Affinity Labs'

license agreements with third parties, including its agreement with Apple. After receiving

detailed briefing from all parties, this Court issued an order defining precisely what constituted a

licensed product under Affinity Labs' agreement with Apple. *See* Ex. 2 (Dkt. Nos. 103, 143, 146,

153). While the defendants in the present litigations have not yet answered Affinity Labs'

complaints, it is likely that the Defendants will contend that the Apple agreement is relevant to

this case, as each Defendant offers an application available for download onto Apple devices

such as iPhones and iPads. This Court's specialized and detailed knowledge of this subject

cannot be overlooked, and it weighs against transfer because the Austin court has no similar

experience or knowledge.

Defendants rely exclusively on the Federal Circuit's decision in *In re Vistaprint Ltd.* to

support their argument that judicial economy should lead to a transfer. But the *Vistaprint*

decision dealt with the situation where only one of the potential courts had prior experience with

the plaintiff and the patented technology. *See* 628 F.3d 1346-47 (Fed. Cir. 2010).  In contrast,

both this Court and the Austin court have overseen cases brought by Affinity Labs involving the

patented technology. Both courts have invested time and resources to become familiar with the

patented technology and with issues particular to this litigation. Unlike in *Vistaprint*, any

familiarity with claim construction issues that would be gained if this case were transferred to

Austin would be more than offset by the loss of this Court's particularized knowledge,

particularly with respect to the construction of Affinity Labs' licenses and discovery-related issues. Consequently, judicial economy does not mandate a transfer in this case.

## II.     Defendants ignore this Court's ability to efficiently and quickly resolve patent cases.

One of the factors that courts must look to when deciding a motion to transfer venue is the levels of congestion in each respective court. As the Federal Circuit has noted, "[t]he real issue is not whether transfer will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket." *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009). In the present case, Affinity Labs filed suit in the Waco Division because it has a track record of efficient, speedy resolution of cases like this one, either through trial or settlement. As the Court is aware, it is standard practice for this Court to set a trial date less than a year after an initial scheduling conference. In the interim, the parties are expected to conduct timely discovery, present claim construction briefs, and move for summary judgment where applicable. In the prior cases Affinity Labs has brought in this jurisdiction, all of them were resolved within a year of the case being filed. *See* n.2, *supra*.

This stands in contrast to the schedule afforded patent cases in the Austin Division. As the Austin Division itself has acknowledged, "[t]he Austin Division is one of the busiest divisions in the Western District of Texas, which itself is one of the busiest districts in the country." *McCoy v. Wells*, No. A-14-CV-663, 2014 U.S. Dist. LEXIS 154705, at *8 (W.D. Tex. Oct. 31, 2014). Because of this workload, it is essentially impossible to get a trial date within two years of filing suit in a patent case. Indeed, the Austin Division acknowledged as much last year:

> As the parties should know, they will not receive a trial setting in this Court until their *Markman* order is entered. The Court is already setting cases in early 2016, and thus even two parties on an expedited and agreed *Markman* schedule are unlikely to receive a trial setting less than two years from now.

*Dataquill, Ltd. v. Apple, Inc.*, No. A-13-CA-706, 2014 U.S. Dist. LEXIS 82410, at *13 (W.D. Tex. June 13, 2014).[3] A survey of Austin patent cases recently set for trial indicates that the time between filing of a complaint and the scheduled jury trial is typically around three years. *See* Ex. 10 (2 years, 10 months from filing of complaint to trial); Ex. 11 (same). This is, of course, consistent with Affinity Labs' prior experience in Austin, where it was assigned a trial date of approximately three-and-a-half years after the date it filed its complaint. *See* Ex. 1 (Dkt. Nos. 1, 116).

Defendants ignore this drastic difference between the dockets in the Austin Division and Waco Division.[4] Defendants' only argument on this point is that the Court should ignore this difference because differences in time to trial can be "highly speculative." Def. Br. at 8-9. In a typical case, in which a court is asked to predict in the abstract how quickly a case may go to trial in a hypothetical alternate jurisdiction, this may be the case. But in the present case, this Court does not need to speculate as to how fast a case brought by Affinity Labs will move in each jurisdiction, because it can simply look at the record for itself. Affinity Labs resolved one case without any discovery in earnest in three years in Austin. Affinity Labs resolved seven cases in less than a year in Waco with extensive discovery and construction of the license agreements. The Waco Division is clearly the more efficient one, and Affinity Labs clearly has the right to select a venue within its home district that has this track record. This factor strongly weighs against transfer.

---

[3]     At the time that the court made this statement, approximately 10 months had already passed since the complaint in the action had been filed. *See* Ex. 9.

[4]     In the Defendants' motion to dismiss, they critique Affinity Labs for resolving cases before "any decision on the merits." *See, e.g.*, Dkt. No. 19 at 3. While a misleading characterization on its own, it is also ironic that the Defendants are now seeking to delay trial for as long as possible.

### III.    The remaining public and private interest factors are neutral.

Interestingly, virtually all of Defendants' arguments on the remaining public and private interest factors focus on whether it would be more convenient *for Affinity Labs* to hold the trial in Austin. Defendants identify virtually no inconvenience that they themselves will suffer if these litigations remain in Waco, as opposed to being transferred to Austin. And this is because with respect to Defendants, there is no difference between Waco and Austin. As this Court has noted, the inventions at the heart of this suit were developed and commercialized in the Western District of Texas, giving this Court a localized interest in this dispute. As a result of its litigations with other entities, all of Affinity Labs' relevant documents are digitized and stored at the office of its counsel in Minneapolis, Minnesota—which is equally far away from both Waco and Austin. All of Defendants' documents and other discovery materials are located outside of Texas, presumably at their principal places of business. All of Defendants' likely witnesses are located outside of Texas.[5] The only arguable inconvenience to Defendants that would be caused by a Waco trial is the Defendants' concern that they will have to take a connecting flight instead of a non-stop one. Def. Br. at 8. Surely this minor interruption cannot justify overturning Affinity Labs' choice of forum.

---

[5]    Indeed, Defendants' only argument regarding witness convenience is that "at least some of *Affinity's likely non-party witnesses* residing in Austin may be beyond the reach of this Court's compulsory process." Def. Br. at 8 (emphasis added). But this was a non-issue both in the *Affinity Labs v. Volkswagen* trial and the *Affinity Labs v. Ford* trial, which ultimately settled about one day before jury selection. Both of these trials were located in Beaumont, Texas, and no party had any legal or practical problem ensuring that relevant witnesses from Austin, Texas could testify. *See also Certified Measurement, LLC v. Centerpoint Energy Houston Electric LLC*, No. 2:14-CV-627, 2015 U.S. Dist. LEXIS 29253, at *10 (E.D. Tex. Mar. 10, 2015) ("Pursuant to the Federal Rules, this Court may enforce a subpoena issued to any nonparty witness in the State of Texas to appear at trial, provided the party does not incur substantial expense."). No reason exists to believe that any of the same witnesses would be unable to testify in Waco, which of course is even closer to Austin than Beaumont.

Instead of articulating any inconvenience to themselves, Defendants focus on whether Waco will be inconvenient for Affinity Labs and its likely witnesses. But as courts in this circuit have noted, "convenience to a plaintiff is not a consideration when analyzing a defendant's motion to transfer since the plaintiff chose the forum and presumably considered convenience and cost." *Connectel, LLC v. Cisco Sys.*, No. 2:04-CV-396, 2005 U.S. Dist. LEXIS 2252, at *7 (E.D. Tex. Feb. 16, 2005) (internal quotations omitted); *see also Cummins-Allison Corp. v. Glory Ltd.*, No. 2:03-CV-358, 2004 U.S. Dist. LEXIS 13839, at *16 (E.D. Tex. May 26, 2004); *j2 Global Commc'ns, Inc. v. Protus IP Solutions, Inc.*, No. 6:08-CV-211, 2008 U.S. Dist. LEXIS 103609, at *10 (E.D. Tex. Dec. 23, 2008). The Defendants' focus on the inconvenience to Affinity Labs is not only legally irrelevant, but it exposes their true motivation for the motion. They simply want a forum that will delay trial for years. This cannot be a legitimate basis to transfer venue. *See, e.g.*, Fed. R. Civ. P. 1 (requiring that courts construe and administer the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action and proceeding").[6]

### Conclusion

Defendants have not shown that the Austin Division is clearly a more convenient forum for this dispute than this Court. Both courts have familiarity with issues in these cases. And it is undisputed that this Court can resolve these cases more efficiently than the Austin Division. Affinity Labs respectfully requests that Defendants' motion to transfer venue be denied.

---

[6]     For instance, Samsung succeeded in transferring venue in its various cases against Affinity Labs from the Eastern and Western Districts of Texas to the Northern District of California. *See* Case No. 6:13-cv-364, Dkt. No. 72. All of those cases were then stayed once the Northern District of California obtained jurisdiction. *See* Exs. 12, 13. Fact discovery thus has not yet begun for a dispute between two parties that initially commenced in November 2012.

Dated: <u>March 30, 2015</u>

Respectfully submitted,

By: <u>/s/ *John P. Palmer*</u>

**Naman Howell Smith & Lee, PLLC**
John P. Palmer (State Bar No. 15430600)
P.O. Box 1470
Waco, TX 76703-1470
(254) 755-4100
Fax: (254) 754-6331
palmer@namanhowell.com
***Counsel for Plaintiff Affinity Labs of Texas, LLC***

**Robins Kaplan LLP**
Ronald J. Schutz (MN No. 130849)*
Cyrus A. Morton (MN No. 287325)*
Patrick M. Arenz (MN No. 386537)*
Daniel R. Burgess (MN No. 389976)*
Shira T. Shapiro (MN No. 390508)*
Kristine A. Tietz (MN No. 393477)*

800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402
Telephone: (612) 349-8500
Facsimile:  (612) 339-4181
RSchutz@RobinsKaplan.com
CMorton@ RobinsKaplan.com
PArenz@ RobinsKaplan.com
DBurgess@ RobinsKaplan.com
SShapiro@ RobinsKaplan.com
KTietz@ RobinsKaplan.com

*Admission to the Western District of Texas
Pending

***Counsel for Plaintiff***
***Affinity Labs of Texas, LLC***

## Certificate of Service

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document (Affinity Labs' Opposition to Defendants' Motion to Transfer Venue) via the Court's CM/ECF system on March 30, 2015.

/s/    *John P. Palmer*