# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| AFFINITY LABS OF TEXAS, LLC, § | | |
|     Plaintiff, § | | |
|         v. § | CASE NO. 6:15-CV-0030-WSS-JCM | |
| § | | |
| DIRECTV, LLC; § | | |
| DIRECTV DIGITAL LLC, § | | |
|     Defendants. § | | |

---

AFFINITY LABS OF TEXAS, LLC, §
    Plaintiff, §
        v. §    CASE NO. 6:15-CV-0031-WSS-JCM
§
NBA MEDIA VENTURES, LLC; §    (Consolidated with
TURNER DIGITAL BASKETBALL §    6:15-CV-0030-WSS-JCM)
SERVICES, INC., §
    Defendants. §

---

AFFINITY LABS OF TEXAS, LLC, §
    Plaintiff, §
        v. §    CASE NO. 6:15-CV-0032-WSS-JCM
§
NHL ENTERPRISES, LP; NHL §    (Consolidated with
ENTERPRISES, INC.; NHL INTERACTIVE §    6:15-CV-0030-WSS-JCM)
CYBERENTERPRISES, LLC, §
    Defendants. §

---

AFFINITY LABS OF TEXAS, LLC, §
    Plaintiff, §
        v. §    CASE NO. 6:15-CV-0033-WSS-JCM
§
MLB ADVANCED MEDIA, LP; §    (Consolidated with
MLB ADVANCED MEDIA, INC., §    6:15-CV-0030-WSS-JCM)
    Defendants. §

---

**DEFENDANTS' REPLY IN SUPPORT OF THEIR**
**MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................2

    I.   DEFENDANTS' MOTION IS RIPE FOR DECISION. ...............................................................2

        A.  No Claim Construction Is Needed to Resolve the Patentability Question.....................2

        B.  There Are No Factual Issues to Be Resolved. .............................................................3

    II.  AFFINITY'S '379 PATENT SATISFIES BOTH STEPS OF THE *ALICE* TEST FOR
         UNPATENTABLE SUBJECT MATTER. ......................................................................................5

        A.  *Alice* Step 1: The '379 Patent Is Directed to the Abstract Idea of Making
            Broadcast Content Available in a Different Region. ......................................................5

        B.  *Alice* Step 2: The '379 Patent Does Not Disclose an "Inventive Concept"
            Sufficient to Transform the Abstract Idea into a Patent-eligible Invention. ...................6

CONCLUSION ................................................................................................................................10

**TABLE OF AUTHORITIES**

**Cases**

*Alice Corp. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014) .................................................................................................. 3, 6, 7, 9

*Baker v. Putnal*,
    75 F.3d 190 (5th Cir.1996) ...................................................................................................... 4

*Bilski v. Kappos*,
    561 U.S. 593 (2010) .............................................................................................................. 6, 7

*Clear with Computers, LLC v. Altec Indus., Inc.*,
    No. 6:14-cv-79, 2015 WL 993392 (E.D. Tex. Mar. 3, 2015) ...................................................... 3

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
    776 F.3d 1343 (Fed. Cir. 2014) ............................................................................................ 2, 6

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014) .......................................................................................... 5, 10

*DealerTrack, Inc. v. Huber*,
    674 F.3d 1315 (Fed. Cir. 2012) .................................................................................................. 6

*Diamond v. Diehr*,
    450 U.S. 175 (1981) ................................................................................................................... 4

*Eclipse IP LLC v. McKinley Equip. Corp.*,
    No. SACV 14-742-GW AJWX, 2014 WL 4407592 (C.D. Cal. Sept. 4, 2014) ......................... 3

*Intellectual Ventures I LLC v. Mfrs. & Traders Trust Co.*,
    --- F. Supp. 3d ----, 2014 WL 7215193 (D. Del. Dec. 18, 2014) .......................................... 3, 6

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    132 S. Ct. 1289 (2012) ..................................................................................................... 3, 7, 9

*Morales v. Square, Inc.*,
    --- F. Supp. 3d ----, 2014 WL 7396568 (W.D. Tex. Dec. 30, 2014) ...................................... 3, 5

*Moreno v. EDCare Mgmt., Inc.*,
    243 F.R.D. 258 (W.D. Tex. 2007) ........................................................................................... 4

*Morsa v. Facebook, Inc.*,
    --- F. Supp. 3d ----, 2014 WL 7641155 (C.D. Cal. Dec. 23, 2014) .......................................... 3

*Open Text S.A. v. Box, Inc.*,
    --- F. Supp. 3d ----, 2015 WL 269036 (N.D. Cal. Jan. 20, 2015) ............................................ 7

*Parker v. Flook*,
    437 U.S. 584 (1978) .................................................................................................................. 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .................................................................................................................. 4

*Tenon & Groove, LLC v. Plusgrade S.E.C.*,
    No. CV 12-1118-GMS-SRF, 2015 WL 1133213 (D. Del. Mar. 11, 2015) ............................... 7

*Ultramercial Inc. v. Hulu, LLC*,
  722 F.3d 1335 (Fed. Cir. 2013) ............................................................................................... 2

*Ultramercial Inc. v. Hulu, LLC*,
  772 F.3d 709 (Fed. Cir. 2014) ........................................................................................ 2, 3, 6

*WildTangent, Inc. v. Ultramercial, LLC*,
  134 S. Ct. 2870 (2014) ............................................................................................................ 2

*Wolf v. Capstone Photography, Inc.*,
  No. 2:13-CV-09573, 2014 WL 7639820 (C.D. Cal. Oct. 28, 2014) ................................... 3, 6

**Statutes**

35 U.S.C. §§ 102 and 103 .............................................................................................................. 4

## PRELIMINARY STATEMENT

Affinity's Opposition fails to respond meaningfully to Defendants' showing that (1) the subject-matter ineligibility of the '379 Patent is a question of law suitable for resolution on the pleadings and (2) the patent is invalid for claiming the unpatentable abstract idea of making a local broadcast available in other areas.

As an initial matter, Affinity is wrong that this issue cannot be decided before construing claims and addressing factual issues relating to novelty and obviousness. Notably, Affinity fails to identify a single disputed claim term affecting the Section 101 analysis. And its misplaced focus on the patent's priority date, the state of the art at that time, and the alleged novelty of the '379 Patent's claims should be rejected, as these factual issues have no legal relevance to the Section 101 inquiry. This dispute can and should be resolved now. *See* Part I.

Affinity is also wrong on the substantive analysis. The '379 Patent claims an abstract idea under step 1 of the *Alice* test. In an attempt to escape this, Affinity misconstrues the law, incorrectly arguing that there are only two narrow categories of unpatentable abstract ideas. *See* Opp. at 6, 13. That is not the law and, even if it were, Affinity's claims still would fail. Affinity's Opposition never disputes that remote broadcasting is a "conventional business practice" desired by radio and television audiences and long provided by broadcasters. Thus, the '379 Patent satisfies step 1 of the *Alice* test for unpatentable subject matter. *See* Part II.A.

Furthermore, Affinity fails to show that the '379 Patent discloses an "inventive concept" sufficient to transform the abstract idea into a patent-eligible invention under step 2 of the *Alice* test. Affinity misstates the law on preemption, arguing incorrectly that unless its patent forecloses *every* method of distributing regional broadcast content to other regions, it must be patentable. Affinity then erroneously argues that the '379 Patent incorporates inventive elements such as specialized hardware, but fails to demonstrate how those known elements are used in

1

anything but conventional ways.   The '379 Patent thus satisfies step 2 of the *Alice* test.  *See* Part II.B.

Affinity's arguments therefore fail, and Defendants' Motion should be granted.

## ARGUMENT

### I.   DEFENDANTS' MOTION IS RIPE FOR DECISION.

Affinity argues that Defendants' Motion is "premature" because (1) "claim construction has not occurred yet," Opp. at 11–12, and (2) there are supposed factual disputes that must be resolved, *id*. at 9–10.  Both these arguments fail as a matter of law.  The Federal Circuit and district courts throughout the country have confirmed that determining patent eligibility under Section 101 is appropriate at the pleading stage.  *See* Mot. at 6–7 (cataloging cases).[1]

#### A.   No Claim Construction Is Needed to Resolve the Patentability Question.

Affinity's argument that it may "ordinarily be desirable . . . to resolve claim construction disputes prior to a § 101 analysis," Opp. at 11, should be rejected for the straightforward reason that no party has raised a claim construction dispute.  Affinity has not identified *any* disputed claim terms that might affect the Court's Section 101 analysis.  In the absence of any claim construction disputes relevant to that analysis, the Court should proceed with determining whether the asserted patent is directed to patent-eligible subject matter.  *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1349 (Fed. Cir. 2014); *Ultramercial Inc. v. Hulu, LLC*, 772 F.3d 709, 712–13 (Fed. Cir. 2014); *Morales v. Square, Inc.*,

---

[1] It is not clear that the clear-and-convincing standard cited by Affinity is applicable.  That is an evidentiary standard not normally invoked at the motion to dismiss stage, and the Federal Circuit decision applying that standard in a Section 101 pleading-stage dispute was subsequently vacated by the Supreme Court.  *WildTangent, Inc. v. Ultramercial, LLC*, 134 S. Ct. 2870 (2014), *vacating Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335 (Fed. Cir. 2013).  Given the Patent Office's long application of the incorrect standard under Section 101, it has been reasonably argued there should be *no* presumption of validity for Section 101 issues.  *See Ultramercial Inc. v. Hulu, LLC*, 772 F.3d 709, 720–21 (Fed. Cir. 2014)  (Mayer, J., concurring).  Regardless, Defendants have shown that the claims of the '379 Patent are ineligible under Section 101.

2

--- F. Supp. 3d ----, 2014 WL 7396568, at *4 (W.D. Tex. Dec. 30, 2014).[2]

      B.    <u>There Are No Factual Issues to Be Resolved.</u>

Affinity also wrongly argues that the Motion is premature due to purported factual disputes related to novelty, obviousness, priority dates, and licensing of the '379 Patent. Opp. at 1–3, 10, 14, 17, 19–20. But, in attempting to manufacture issues of fact, Affinity conflates the proper legal "inventive concept" inquiry of Section 101 analysis with irrelevant factual issues.

Under the second *Alice* step, courts *must* consider each claim element to determine if its function is "purely conventional," or if it has some "inventive concept." *See Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2357-59 (2014). Using elements with only "well understood, routine, conventional activity," either separately or in combination, cannot provide the "inventive concept" that might transform an abstract idea into something patentable. *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012); *Ultramercial*, 772 F.3d at 715–16 (affirming 12(b)(6) dismissal of claims implementing an abstract idea "with routine, conventional activity"). Thus, this is not "attorney argument" about factual issues as Affinity claims, *see* Opp. at 1, 9–10, but rather a required legal analysis as to whether "the basic character of the claimed subject matter is readily ascertainable from the face of the patent." *See Wolf v. Capstone Photo., Inc.*, No. 2:13-CV-09573, 2014 WL 7639820, at *6 (C.D. Cal. Oct. 28, 2014).

To argue patent-eligibility under Section 101, Affinity repeatedly touts the purported

---

[2] *See also Clear with Computers, LLC v. Altec Indus., Inc.*, No. 6:14-cv-79, 2015 WL 993392, at *3 (E.D. Tex. Mar. 3, 2015) (stating "neither party has identified any disputes presently ripe for claim construction."); *Morsa v. Facebook, Inc.*, --- F. Supp. 3d ----, 2014 WL 7641155, at *4 (C.D. Cal. Dec. 23, 2014) ("[C]laim construction is a prerequisite to the § 101 inquiry 'only where claim construction disputes are relevant.'" (quoting *Eclipse IP LLC v. McKinley Equip. Corp.*, No. SACV 14-742-GW AJWX, 2014 WL 4407592, at *5 (C.D. Cal. Sept. 4, 2014)); *Intellectual Ventures I LLC v. Mfrs. & Traders Trust Co.*, --- F. Supp. 3d ----, 2014 WL 7215193, at *6 (D. Del. Dec. 18, 2014) (concluding the court may proceed with the § 101 analysis because plaintiffs "make no mention of how the construction of certain limitations would inform the § 101 analysis").

novelty and non-obviousness of the alleged invention, including licenses to the patent, the state of the art as of the patent's priority date, and activities during prosecution of the patent. Affinity even attempts to introduce an improper expert declaration about these issues. Dkt. No. 25-6.[3]  It is evident that Affinity confuses issues of novelty and non-obviousness, as governed by 35 U.S.C. §§ 102 and 103, with the issue of patentable subject matter, governed by Section 101, when it relies on *Medtronic CoreValve, LLC v. Edwards Lifesciences Corp.*, 741 F.3d 1359 (Fed. Cir. 2014), for the proposition that the "priority date . . . is elementary for purposes of any invalidity decision." Opp. at 10.  Priority date is never relevant to a Section 101 analysis, and is not even mentioned in either *Alice* or *Ultramercial*.  Moreover, *Medtronic* is not a Section 101 case at all—it addresses anticipation under Section 102.  *See Medtronic*, 741 F.3d at 1367.

Nevertheless, Affinity eventually concedes that the inquiry into patent-eligibility is separate from inquiries into anticipation, novelty, and obviousness.  *See* Opp. at 20.  "The 'novelty' of any element or steps in a process, or even of the process itself, is of *no relevance* in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter."  *Diamond v. Diehr*, 450 U.S. 175, 188–89 (1981) (emphasis added).  The Court, therefore, should disregard Affinity's expert declaration and its arguments relating to novelty and non-obviousness.  Those irrelevant issues have no bearing on Defendants' Motion.

---

[3] Affinity's inclusion of the McAlexander Declaration is inappropriate.  When reviewing a motion to dismiss, a district court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  The Court cannot consider extrinsic evidence in ruling on a 12(b)(6) motion.  *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir. 1996).  Since Affinity's complaints do not refer to the McAlexander Declaration, the Court should disregard it.  *See Moreno v. EDCare Mgmt., Inc.*, 243 F.R.D. 258, 260 (W.D. Tex. 2007) (disregarding extrinsic documents not referred to by plaintiff's complaint).

## II. AFFINITY'S '379 PATENT SATISFIES BOTH STEPS OF THE *ALICE* TEST FOR UNPATENTABLE SUBJECT MATTER.

### A. *Alice* Step 1: The '379 Patent Is Directed to the Abstract Idea of Making Broadcast Content Available in a Different Region.

In addressing the first *Alice* step, Affinity argues that the subject matter of the '379 Patent falls outside two allegedly exclusive categories of abstract ideas defined by the Federal Circuit. Opp. at 13–14 (citing *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014)). Setting aside the inaccuracy of Affinity's characterization of *DDR*,[4] Affinity nevertheless concedes that abstract ideas include *conventional business practices*. *See id.*

Affinity never disputes that radio and television broadcasters have long sought to make their broadcasts reach additional regions, for example using such methods as repeaters, station translators, satellite relays, and cable networks. *See* Mot. at 1. Nor does Affinity dispute that users have long sought to receive broadcasts from remote locations, for instance by asking a distant friend to hold the phone up to the radio or television. *See id.* at 7. In other words, Affinity does not dispute that remote broadcasting is a conventional business practice long requested by users and provided by broadcasters.

Instead, Affinity accuses Defendants of "attempting to satisfy step 1 [of the *Alice* analysis] by re-writing the method claim[s]" and "ignor[ing] the specific structural elements" of the system claims. Opp. at 14. But such accusations conflate the steps of the Section 101 analysis. Details about the method's steps and the system's implementations are the province of

---

[4] While *DDR* recognizes (1) mathematical algorithms and (2) fundamental economic and conventional business practices as abstract, the court did not limit abstract ideas to just those two categories. *See* 773 F.3d at 1256. Indeed, *DDR* expressly noted that *Alice* did not "delimit the precise contours of the 'abstract ideas' category." *Id.* The court also expressly noted that the *DDR* patent did not fit either of these two categories, but that did not end the abstract idea inquiry, as it would have had these two categories been exclusive. *See id.* at 1257. This District has recognized that the "abstract ideas category is broad." *Morales*, 2014 WL 7396568, at *6 (cataloging cases).

*Alice* step 2, not step 1. The goal of step 1 is to identify the "basic concept" of the claims. *Alice*, 134 S. Ct. at 2356 (holding the claims at issue were "drawn to the concept of intermediated settlement"); *see also id.* (stating that claims in *Bilski* described "the basic concept of hedging, or protecting against risk"). Stated differently, in step 1 the courts determine the "basic concept," "central idea," "basic character," or "core idea" of the patent. *See, e.g.*, *Content Extraction*, 776 F.3d at 1347 (reducing claim elements to their fundamental abstract ideas); *Ultramercial*, 772 F.3d at 714–15 (same); *DealerTrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012) (same); *Wolf*, 2014 WL 7639820, at *6; *Intellectual Ventures*, 2014 WL 7215193, at *6 (same).

The basic concept expressed in the '379 Patent claims is a system and method for delivering regionally broadcast content to another region. *See, e.g.*, '379 Patent claim 1, col. 18 ll. 38–42; *id.* claim 14, col. 19 ll. 21–23. The basic concept is expressed in the specification as "delivering regionally broadcasted content . . . outside [the] region of the regionally broadcasted content." *Id.* at Abstract. Affinity does not contest that this is an abstract, conventional business practice. The '379 Patent thus satisfies step 1 of the *Alice* test for unpatentable subject matter.

      B.     <u>*Alice* Step 2: The '379 Patent Does Not Disclose an "Inventive Concept" Sufficient to Transform the Abstract Idea into a Patent-Eligible Invention.</u>

Affinity also fails to refute Defendants' showing in step 2 of the *Alice* test that the '379 Patent reflects nothing more than the conventional use of known, generic elements.

          1.     Affinity's Preemption Arguments Do Not Save the '379 Patent.

In opposing Defendants' Motion, Affinity relies heavily on preemption arguments to save the '379 Patent. Affinity incorrectly argues that "if a patent claim does not preempt *all* use of the broad, abstract idea, then the claim is *not* prohibited under § 101." Opp. at 2 (emphasis added); *see also id.* at 15. That is not the law. The fact that the '379 Patent "do[es] not preempt *all* avenues of broadcasting regional content to an area outside the region," *id.* at 15 (emphasis

6

added), is insufficient to save the patent.[5]

A mere field of use limitation cannot make an otherwise abstract claim patent-eligible. *See* Mot. at 14 (cataloging cases). A field of use limitation does not resolve preemption concerns because it still allows the patentee to preempt use of the abstract idea in that field. Preemption of the entire abstract idea—even in a "small" field such as the '379 Patent's delivery of content to a cellphone running an application—is inconsistent with the Supreme Court's "'repeated[] . . . concern that patent law not inhibit further discovery by improperly tying up the future use of' these building blocks of human ingenuity." *Alice*, 134 S. Ct. at 2354 (quoting *Mayo*, 132 S. Ct. at 1301). "[L]imiting the use of an abstract idea 'to a particular technological environment'" "is not enough for patent eligibility." *Id.* at 2358 (quoting *Bilski v. Kappos*, 561 U.S. 593, 610–11 (2010)).

Furthermore, the Supreme Court has consistently expressed the concern that patent eligibility not "depend simply on the draftsman's art." *Id.* at 2359 (quoting *Parker v. Flook*, 437 U.S. 584, 593 (1978)). Allowing a field of use limitation to confer patent eligibility would create exactly that sort of dependence—a skilled patent drafter could craft a set of claims that together would preempt an entire abstract idea by limiting each individual claim to a specific field. This loophole would not even be difficult to exploit, as a single patent could preempt the use of an

---

[5] Contrary to Affinity's rhetoric, *see* Opp. at 2, 15–16, Defendants "ha[ve] in fact considered the preemption concern because it is already baked into the *Mayo/Alice* test." *See Open Text S.A. v. Box, Inc.*, --- F. Supp. 3d ----, 2015 WL 269036, at *4 (N.D. Cal. Jan. 20, 2015). The Supreme Court did not create a separate test for preemption apart from the two-part *Alice* test. Rather, "[t]he focus on preemption goes hand-in-hand with the inventive concept requirement" of the second *Alice* step. *Tenon & Groove, LLC v. Plusgrade S.E.C.*, No. CV 12-1118-GMS-SRF, 2015 WL 1133213, at *4 (D. Del. Mar. 11, 2015); *see also Open Text*, 2015 WL 269036, at *4 ("Even if it were possible to do in a non-speculative way, which is not the case, the Court is not required to anticipate the number, feasibility, or adequacy of non-infringing alternatives to gauge a patented invention's preemptive effect in order to determine whether a claim is patent-eligible under section 101. The relevant precedents simply direct it to [apply the two-step *Mayo/Alice* test].").

entire abstract idea by including a separate claim for each field of use.  Thus, limiting the '379 Patent to delivering content to a cellular phone running an application does not resolve the preemption concerns or render the idea patentable.[6]

        2.        Affinity Identifies No Specific Hardware or Software Elements, or Combination of Elements, Which Provide an Inventive Concept.

Defendants' Motion demonstrated that the '379 Patent uses nothing but generic, well-known hardware and software, specified at a high level of generality, in conventional ways that fail to provide the patent with an "inventive concept."  The Opposition claims in response that the "elements of the '379 Patent . . . transform the purported abstract idea of the '379 Patent."  Opp. at 17.  But the elements that Affinity identifies, *id.* at 16–17, 19, are nothing but routine and conventional hardware and software performing their basic, routine, and expected functions to carry out the customary and abstract business practice of remote broadcasting.

Specifically, Affinity mentions that the claims include "network resources" and "non-transitory storage medi[a]," but fails to explain what those resources and media are, or how they differ from such resources and media in any routine computer or broadcast networks.  In fact, the specification notes that many different types of pre-existing networks can be used.  '379 Patent col. 4 ll. 55–64.  Affinity also mentions the claims' "portable electronic device" element, but fails to explain why that device is anything but conventional.  Indeed, the specification notes that any "wireless communications device, such as, a cellular phone, a PDA device, or other devices" may be used to practice the invention.  *Id.* col. 6 ll. 25–27.  Similarly, Affinity does not explain how its unspecified "graphical user interface," "listing of available media sources," and "selection of the regional broadcasting channel" would differ in function or use from the dials,

---

[6] This is further illustrated by the fact that, if the claim term "wireless cellular telephone device" were replaced with the "satellite radio," "satellite television," "cable television," "personal computer," or "FM receiver" examples Affinity mentions, Opp. at 15, the '379 Patent would preempt each of those fields, as well.

selectors, programming guides, or screens long used on typical radios, televisions, cell phones, or other electronic devices. Nor does Affinity explain how its "streaming of content," "streaming media signal," "information about a song," "list of top songs," and "search[ing] . . . artist, song, and genre" differ from Internet radio and streaming audio that the patent concedes existed prior to the alleged invention. *Id.* col. 5 ll. 60-61, col. 7 ll. 9–10, col. 10 l. 44. Affinity also omits any explanation of how the "downloadable application" differs from software applications that have long been downloadable to electronic devices, including "over-the-air" programming of cell phones. *See, e.g.*, *id.* at 7 (attached as Ex. 1) (citing as prior art U.S. Patent Appl. No. 60/167,179, entitled "System, Method, and Device for Playing Recorded Music on a Wireless Communications Device"); *id.* at 8 (citing as prior art IEEE 802.11 wireless communication standards and *Business Wire*, "'HUM' MP3 Software Turns Windows CE Handheld Computers Into Portable Music Players" (May 24, 1999), which described a downloadable software application to handheld devices). Thus, "the claims at issue amount to 'nothing significantly more' than an instruction to apply the abstract idea" using a cellular phone and the Internet. *See Alice*, 134 S. Ct. at 2360 (quoting *Mayo*, 132 S. Ct. at 1298). "[T]hat is not '*enough*' to transform an abstract idea into a patent eligible invention." *See id.* (emphasis in original). Moreover, because Affinity failed to explain how the hardware and software components are "specialized" or at all "tied to a particular machine or apparatus," the '379 Patent also fails the machine-or-transformation test.[7]

Affinity's reliance on *DDR* is misplaced for the same reason. *See* Opp. at 7–8. *DDR* does *not* stand for the proposition that "the Federal Circuit will confirm subject matter eligibility for patents that do not take a pre-Internet business method and apply it with computers or the

---

[7] Affinity advanced no arguments that the '379 Patent satisfies the transformation prong of the machine-or-transformation test. *See* Opp. at 18–19.

Internet." *See id.* Rather, the Federal Circuit upheld the *DDR* claims because they addressed a specific problem that arose from the operation of the Internet itself, and created a solution that overrides the routine and conventional use of the Internet. *DDR*, 773 F.3d at 1258–59. Affinity, on the other hand, uses routine and conventional hardware and software components performing their basic, routine, and expected functions.

Finally, Affinity complains about Defendants' characterization of the method claims which, reduced to their fundamental elements, recite nothing more than the abstract concepts of (1) maintaining a system for delivering regional broadcast content, (2) providing a way to request the content, and (3) communicating the content to an area outside the local region. But Affinity's own description of its alleged invention is not demonstrably different:

> The claimed inventions are restricted to . . . a broadcast system and method that uses network resources and a downloadable application for execution on a portable electronic device to allow the streaming of content outside of a limited geographic location.

Opp. at 16. Elsewhere, Affinity describes the claimed steps as "maintaining a delivery system, providing an over the air download of a software application, and communicating a streaming media signal." *Id.* at 19. Neither of these descriptions explains why the method claims perform these steps in a way that could be considered inventive.

Having failed to show that the method and system claims do anything more than implement an abstract idea with no "inventive concept," Affinity's own brief demonstrates that the '379 Patent satisfies step 2 of the *Alice* test for unpatentable subject matter.

## CONCLUSION

For the foregoing reasons and those presented in their Opening Brief, Defendants respectfully request that the Court dismiss this case with prejudice under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Dated: April 13, 2015                                  Respectfully submitted,

By: */s/ Hilary L. Preston*
David B. Weaver (TBN 00798576)
Jeffrey T. Han (TBN 24069870)
**VINSON & ELKINS LLP**
2801 Via Fortuna, Suite 100
Austin, Texas 78746-7568
Tel: (512) 542-8400
Fax: (512) 236-3218
dweaver@velaw.com
jhan@velaw.com

Hilary L. Preston (TBN 24062946)
**VINSON & ELKINS LLP**
666 Fifth Avenue, 26th Floor
New York, New York 10103-0040
Tel: (212) 237-0000
Fax: (212) 237-0100
hpreston@velaw.com

*Attorneys for Defendants NBA Media Ventures, LLC; Turner Digital Basketball Services, Inc.; NHL Enterprises, L.P.; NHL Enterprises, Inc.; and NHL Interactive CyberEnterprises, LLC*

By: */s/ Ryan K. Yagura*
Darin W. Snyder (*pro hac vice*)
CA S.B. #136003
**O'Melveny & Myers LLP**
Two Embarcadero Center, 28th Floor
San Francisco, California  94111-3823
Tel:  (415) 984-8700
Fax:  (415) 984-8701
dsnyder@omm.com

Ryan K. Yagura  (TBN 240755933)
CA S.B. #197619
Brian M. Cook (*pro hac vice*)
CA S.B. #266181
**O'Melveny & Myers LLP**
400 South Hope Street
Los Angeles, California  90071-2899
Tel:  (213) 430-6000
Fax:  (213) 430-6407
ryagura@omm.com
bcook@omm.com

Hana O. Chen (*pro hac vice*)
CA S.B. #300846
**O'Melveny & Myers LLP**
610 Newport Center Drive
Newport Beach, California 92660
Tel: (949) 823-6900
Fax: (949) 823-6994
hchen@omm.com

*Attorneys for Defendants DIRECTV, LLC and DIRECTV Digital LLC*

By: */s/ Lindsy Solanki*
Lindsy Solanki (TBN 24055094)
**COOLEY LLP**
3175 Hanover Street
Palo Alto, CA 94304
Tel: (650) 843-5000
Fax: (650) 843-7400
lsolanki@cooley.com

Christopher C. Campbell (application in process)
Nathan K. Cummings (application submitted)
**COOLEY LLP**
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, Virginia 20190-5656
Tel:  (703) 456-8000
Fax:  (703) 456-8100
ccampbell@cooley.com
ncummings@cooley.com

*Attorneys for Defendants MLB Advanced Media, L.P. and MLB Advanced Media, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of April, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and I hereby certify that this instrument has been served using the CM/ECF system on the counsel of record.

 */s/ Hilary L. Preston*
Hilary L. Preston

13