**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| AFFINITY LABS OF TEXAS, LLC, | § | |
| Plaintiff, | § | |
| v. | § | CASE NO. 6:15-CV-0030-WSS-JCM |
| | § | |
| DIRECTV, LLC; | § | |
| DIRECTV DIGITAL LLC, | § | |
| Defendants. | § | |

---

| | | |
|---|---|---|
| AFFINITY LABS OF TEXAS, LLC, | § | |
| Plaintiff, | § | |
| v. | § | CASE NO. 6:15-CV-0031-WSS-JCM |
| | § | |
| NBA MEDIA VENTURES, LLC; | § | (Consolidated with |
| TURNER DIGITAL BASKETBALL | § | 6:15-CV-0030-WSS-JCM) |
| SERVICES, INC., | § | |
| Defendants. | § | |

---

| | | |
|---|---|---|
| AFFINITY LABS OF TEXAS, LLC, | § | |
| Plaintiff, | § | |
| v. | § | CASE NO. 6:15-CV-0032-WSS-JCM |
| | § | |
| NHL ENTERPRISES, LP; NHL | § | (Consolidated with |
| ENTERPRISES, INC.; NHL INTERACTIVE | § | 6:15-CV-0030-WSS-JCM) |
| CYBERENTERPRISES, LLC, | § | |
| Defendants. | § | |

---

| | | |
|---|---|---|
| AFFINITY LABS OF TEXAS, LLC, | § | |
| Plaintiff, | § | |
| v. | § | CASE NO. 6:15-CV-0033-WSS-JCM |
| | § | |
| MLB ADVANCED MEDIA, LP; | § | (Consolidated with |
| MLB ADVANCED MEDIA, INC., | § | 6:15-CV-0030-WSS-JCM) |
| Defendants. | § | |

---

**DEFENDANTS' RESPONSE TO PLAINTIFF AFFINITY LABS OF
TEXAS, LLC'S OBJECTION TO REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ..............................................................................................................................3

   I.   LEGAL STANDARD FOR OBJECTIONS TO REPORT AND RECOMMENDATION ..........................4

   II.  THE MAGISTRATE JUDGE CORRECTLY FOUND THAT DEFENDANTS' MOTION IS RIPE
      FOR DECISION. ...............................................................................................................4

   III. THE MAGISTRATE JUDGE CORRECTLY CONCLUDED THAT THE ASSERTED PATENT
      CLAIMS AN ABSTRACT IDEA. ..........................................................................................6

      A. The First Step of the *Mayo/Alice* Test Utilizes a "Quick Look" to Determine the
         "Purpose of the Claim." ...........................................................................................7

      B. The '379 Patent Is Directed to the Abstract Idea of Dissemination of Regionally
         Broadcasted Content to Users Outside the Region. ....................................................7

      C. Neither the Supreme Court Nor the Federal Circuit Have Limited Abstract Ideas to
         the Two Categories Plaintiff Identifies. ....................................................................8

   IV. THE MAGISTRATE JUDGE CORRECTLY CONCLUDED THAT THE ASSERTED PATENT DOES
      NOT CONTAIN AN "INVENTIVE CONCEPT." .....................................................................10

      A. The Magistrate Judge Correctly Applied a "Technological Arts" Test Based on the
         Supreme Court's *Alice* Decision. ............................................................................10

      B. The Over-the-Air Downloadable Application with a Graphical User Interface Fails
         to Provide an "Inventive Concept." ..........................................................................11

      C. Considered As a Whole, Each Claim of the '379 Patent Fails to Add Anything
         That Is Not Already Present When the Elements Are Considered Separately. ...........14

      D. The "Inventive Concept" Inquiry Does Not Present Any Factual Issues that
         Preclude Granting Defendants' Motion. ....................................................................15

      E. The '379 Patent Fails the Machine-or-Transformation Test. .......................................15

   V.  THE MAGISTRATE JUDGE CORRECTLY ANALYZED THE '379 PATENT'S DEPENDENT
      CLAIMS. .......................................................................................................................16

   VI. PLAINTIFF'S PREEMPTION OBJECTION CANNOT SAVE THE '379 PATENT. ..........................17

CONCLUSION ...........................................................................................................................18

# TABLE OF AUTHORITIES

## Cases

*Affinity Labs of Tex., LLC v. Clear Channel Broad., Inc.*,
No. 1:12-CV-205-LY, 2014 WL 1699063 (W.D. Tex. Apr. 29, 2014)....................................... 8

*Alice Corp. v. CLS Bank Int'l*,
134 S. Ct. 2347 (2014).................................................................................................. passim

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
--- F.3d ----, 2015 WL 3634649 (Fed. Cir. June 12, 2015).......................................... 16, 17, 18

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*,
133 S. Ct. 2107 (2013)............................................................................................................... 14

*Baker v. Putnal*,
75 F.3d 190 (5th Cir. 1996) ........................................................................................................ 5

*Battle v. U.S. Parole Comm'n*,
834 F.2d 419 (5th Cir. 1987) ...................................................................................................... 4

*Bilski v. Kappos*,
561 U.S. 593 (2010).............................................................................................................. 14, 17

*Cal. Inst. of Tech. v. Hughes Commc'ns Inc.*,
59 F. Supp. 3d 974 (C.D. Cal. 2014) .......................................................................................... 7

*Clear with Computers, LLC v. Altec Indus., Inc.*,
No. 6:14-cv-79, 2015 WL 993392 (E.D. Tex. Mar. 3, 2015)...................................................... 5

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
776 F.3d 1343 (Fed. Cir. 2014) ........................................................................................ 4, 6, 16

*DDR Holdings, LLC v. Hotels.com, L.P.*,
773 F.3d 1245 (Fed. Cir. 2014) ...................................................................................... 9, 11, 13

*Eclipse IP LLC v. McKinley Equip. Corp.*,
No. SACV 14-742-GW AJWX, 2014 WL 4407592 (C.D. Cal. Sept. 4, 2014) ........................ 5

*Intellectual Ventures I LLC v. Mfrs. & Traders Trust Co.*,
--- F. Supp. 3d ----, 2014 WL 7215193 (D. Del. Dec. 18, 2014)............................................... 5

*Internet Patents Corp. v. Active Network, Inc.*,
--- F.3d ----, 2015 WL 3852975 (Fed. Cir. June 23, 2015)............................................... passim

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
132 S. Ct. 1289 (2012)...................................................................................................... passim

*Morales v. Square, Inc.*,
--- F. Supp. 3d ----, 2014 WL 7396568 (W.D. Tex. Dec. 30, 2014) ..................................... 5, 7

*Moreno v. EDCare Mgmt., Inc.*,
243 F.R.D. 258 (W.D. Tex. 2007) .............................................................................................. 5

*Morsa v. Facebook, Inc.*,
--- F. Supp. 3d ----, 2014 WL 7641155 (C.D. Cal. Dec. 23, 2014) ........................................... 5

*OIP Techs., Inc. v. Amazon.com, Inc.*,
  --- F.3d ----, 2015 WL 3622181 (Fed. Cir. June 11, 2015)........................................... 1, 5, 6, 15

*Parker v. Flook*,
  437 U.S. 584 (1978)................................................................................................. 14, 17

*Planet Bingo, LLC v. VKGS LLC*,
  576 F. App'x 1005 (Fed. Cir. 2014) .............................................................................. 16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)........................................................................................................ 5

*Ultramercial, Inc. v. Hulu, LLC*,
  772 F.3d 709 (Fed. Cir. 2014) ............................................................................... passim

**Statutes**

35 U.S.C. § 101 .................................................................................................... passim

35 U.S.C. § 102 ...................................................................................................... 13, 14

35 U.S.C. § 103 ...................................................................................................... 13, 14

**Rules**

Fed. R. Civ. P. 12(b)(6)........................................................................................... 5, 18

Fed. R. Civ. P. 72(b)(2)........................................................................................... 2, 4, 15

Fed. R. Evid. 201(b)...................................................................................................... 9

Defendants respectfully submit this Response to Plaintiff Affinity Labs of Texas, LLC's Objection to Report and Recommendation of the United States Magistrate Judge ("Obj.") (Dkt. No. 56) and request that the Court adopt the Report and Recommendation of the United States Magistrate Judge ("R&R") (Dkt. No. 53) to grant Defendants' Motion to Dismiss (Dkt. No. 19). As the Report and Recommendation sets forth in detail, dismissal is warranted because the sole patent asserted by Plaintiff against Defendants in this action, U.S. Patent No. 7,970,379 ("the '379 Patent"), is invalid under 35 U.S.C. § 101 for failing to claim patentable subject matter.

## PRELIMINARY STATEMENT

After reviewing comprehensive briefing from the parties, studying and mastering the facts and holdings of dozens of Section 101 cases, and presiding over nearly six hours of oral argument, Magistrate Judge Manske issued a thorough and well-reasoned Report and Recommendation, concluding that the '379 Patent is invalid. His recommendation "adher[es] to the Supreme Court's instruction that patent eligibility is a 'threshold' issue" that should be resolved "at the first opportunity." *See OIP Techs., Inc. v. Amazon.com, Inc.*, --- F.3d ----, 2015 WL 3622181, at *4 (Fed. Cir. June 11, 2015) (Mayer, J. concurring). Indeed, the Federal Circuit recently issued a decision "commend[ing]" yet another court for similarly addressing the Section 101 issue at the pleadings stage. *Id.*

This Court should adopt the Report and Recommendation as a whole and dismiss this lawsuit. The '379 Patent is directed to an unpatentable abstract idea. The alleged invention extends the decades-old business practice of expanding the reach of regional broadcasts to users outside the region merely by including cellular phones. The claims do not recite, and the specification does not describe, any new technology that makes this possible.

Applying the Supreme Court's two-part test for assessing whether an asserted patent complies with Section 101, the Magistrate Judge first correctly concluded that the '379 Patent

1

claims the abstract idea of disseminating regionally broadcasted content to users outside the region.  R&R at 17.  The Magistrate Judge then found that the '379 Patent fails to include an "inventive concept" that would make the patent claims a patentable application of the abstract idea.  *Id.* at 18–24.  Instead, the '379 Patent merely "takes the abstract idea and says 'apply it' to a wireless, cellular telephone device."  *Id.* at 22.  This fails the Supreme Court's Section 101 test and renders the '379 Patent invalid.

Plaintiff has filed objections attacking nearly every aspect of the Report and Recommendation.  In doing so, Plaintiff fills its objections with general, conclusory statements and out-of-context quotations, alleging only a few specific points of error without explaining how those purported errors affected the Magistrate Judge's final recommendation.  Plaintiff thus fails to satisfy even the threshold requirement under the Federal Rules to file "*specific* written objections," and thus the Court need not even consider them.  *See* Fed. R. Civ. P. 72(b)(2) (emphasis added).

Plaintiff cannot avoid the significant shift in Section 101 jurisprudence since the Supreme Court's decision in *Alice Corp. v. CLS Bank International*, 134 S. Ct. 2347 (2014).  In the year since *Alice*, courts around the country have dismissed a dramatically higher percentage of cases *at the pleading stage* based on subject-matter ineligibility.  *See* R&R at 3 ("*Alice* has engendered a wave of decisions . . . under § 101.").  There are strong policy reasons for this result.  As the Magistrate Judge stated, "[a]ddressing § 101 at the outset of litigation has 'a number of salutary effects:' it 'conserve[s] scarce judicial resources,' 'provides a bulwark against vexatious infringement suits,' and protects the public at the outset from 'patents that stifle innovation and transgress the public domain.'"  R&R at 7 (quoting *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 719–20 (Fed. Cir. 2014) (Mayer, J., concurring)).  All of these considerations are relevant

2

here, where Plaintiff filed the four now-consolidated cases against Defendants asserting the '379 Patent quickly on the heels of a settlement in a prior case on the same patent.  *See* Complaint, Dkt. No. 1 (filed Feb. 3, 2015); Final Judgment, *Affinity Labs of Tex., LLC v. Clear Channel Broad., Inc.*, No. 1:12-CV-205-LY, Dkt. No. 126 (W.D. Tex. Jan. 5, 2015).

The Court, now equipped with new direction from *Alice* and its progeny, should end this pattern by addressing at the outset that the '379 Patent does not claim eligible subject matter and thus that Plaintiff's Complaint fails to state a claim upon which relief can be granted.  As set forth below, Magistrate Judge Manske's Report and Recommendation is fully supported by controlling case law, and Plaintiff's objections therefore fail.  Defendants respectfully request that the Court adopt the Magistrate Judge's Report and Recommendation and dismiss this case with prejudice.

## ARGUMENT

As the Magistrate Judge's Report and Recommendation correctly holds, the '379 Patent, simply entitled "Providing Broadcast Content," extends the decades-old business practice of expanding the reach of regional broadcasts to users outside the region merely by including cellular phones.  The claims do not recite any new technology that makes this possible.  Rather, they merely present a straightforward description of the conventional business model, accompanied by a generic recitation of a conventional cellular phone with its familiar parts (buttons, memory, a display, a housing) and an application, downloaded to the phone, that receives a stream of data.  As the Supreme Court's *Alice* decision and its progeny have established, an abstract idea is not transformed into a patentable claim by adorning it with conventional components.  The cellular phone and software application recited in the claims of the '379 Patent do not make this abstract idea patent eligible.  The '379 Patent, therefore, is invalid, and this case should be dismissed.  Plaintiff's objections should be rejected because they

3

are contrary to the numerous Section 101 decisions issued by the Supreme Court, the Federal Circuit, and district courts around the country invalidating similarly abstract patents.

## I.     LEGAL STANDARD FOR OBJECTIONS TO REPORT AND RECOMMENDATION

Parties objecting to a Magistrate Judge's Report and Recommendation must file "specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2). "Frivolous, conclusive or general objections need not be considered by the district court."  *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

## II.    THE MAGISTRATE JUDGE CORRECTLY FOUND THAT DEFENDANTS' MOTION IS RIPE FOR DECISION.

Plaintiff first objects to the Magistrate Judge's recommendation that the Section 101 issue is ripe for adjudication, arguing that the Report and Recommendation makes "unsupported claim construction . . . determinations."  *See* Obj. at 3–6.  However, Plaintiff (1) fails to identify a single disputed claim term that requires construction prior to deciding the present motion; (2) fails to identify a single term or construction that the Magistrate Judge allegedly "implicitly decid[ed]," *id.* at 5; (3) fails to explain how any term was allegedly construed incorrectly; and (4) fails to explain how any term allegedly construed by the Magistrate Judge affected the resulting Report and Recommendation.  *Id.* at 4–6.  Plaintiff thus fails to satisfy the requirement for "*specific* written objections" mandated by Rule 72(b)(2) (emphasis added), and its claim construction objections should be rejected.

The Report and Recommendation faithfully follows the decisions of the Federal Circuit and numerous district courts in concluding that a motion to dismiss based on Section 101 is ripe for decision when there are no relevant claim construction disputes.  *See, e.g.*, *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1349 (Fed. Cir. 2014); *Ultramercial*, 772 F.3d at 712–13 (majority op.); *Morales v. Square, Inc.*, --- F. Supp. 3d

4

----, 2014 WL 7396568, at *4 (W.D. Tex. Dec. 30, 2014).[1]   Indeed, in just the few weeks since the Magistrate Judge issued his Report and Recommendation, the Federal Circuit has issued two new decisions affirming the invalidity of patents under Section 101 on early motions to dismiss. *See Internet Patents Corp. v. Active Network, Inc.*, --- F.3d ----, 2015 WL 3852975 (Fed. Cir. June 23, 2015) (affirming dismissal under Fed. R. Civ. P. 12(b)(6)); *OIP Techs., Inc. v. Amazon.com, Inc.*, --- F.3d ----, 2015 WL 3622181 (Fed. Cir. June 11, 2015) (same).

Plaintiff also incorrectly argues that the motion is not ripe because the Magistrate Judge "erred in making unsupported factual determinations regarding what was conventional, routine, or well-known at the time of the invention," and that such factual issues are not properly resolved at the present stage of the case.  Obj. at 6.[2]   This objection, too, disregards numerous Federal Circuit and district court decisions invalidating patents under Section 101 on motions to dismiss because conventional, routine, or well-known elements failed to provide an inventive concept.  *See, e.g.*, *Internet Patents*, 2015 WL 3852975, at *5 (citing patent specification to show

---

[1] *See also Clear with Computers, LLC v. Altec Indus., Inc.*, No. 6:14-cv-79, 2015 WL 993392, at *3 (E.D. Tex. Mar. 3, 2015) (stating "neither party has identified any disputes presently ripe for claim construction"); *Morsa v. Facebook, Inc.*, --- F. Supp. 3d ----, 2014 WL 7641155, at *4 (C.D. Cal. Dec. 23, 2014) ("[C]laim construction is a prerequisite to the § 101 inquiry 'only where claim construction disputes are relevant.'" (quoting *Eclipse IP LLC v. McKinley Equip. Corp.*, No. SACV 14-742-GW AJWX, 2014 WL 4407592, at *5 (C.D. Cal. Sept. 4, 2014)); *Intellectual Ventures I LLC v. Mfrs. & Traders Trust Co.*, --- F. Supp. 3d ----, 2014 WL 7215193, at *6 (D. Del. Dec. 18, 2014) (concluding the court may proceed with the § 101 analysis because plaintiffs "make no mention of how the construction of certain limitations would inform the § 101 analysis").

[2] Plaintiff's reliance on the McAlexander Declaration in order to manufacture issues of fact is inappropriate.  When reviewing a motion to dismiss, a district court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  The Court cannot consider extrinsic evidence in ruling on a 12(b)(6) motion.  *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir. 1996).  Since Affinity's complaints do not refer to the McAlexander Declaration, the Magistrate Judge was correct to disregard it.  *See Moreno v. EDCare Mgmt., Inc.*, 243 F.R.D. 258, 260 (W.D. Tex. 2007) (disregarding extrinsic documents not referred to by plaintiff's complaint).

the claim elements were "conventional," "common," and "well-known"); *OIP Techs.*, 2015 WL 3622181, at \*3 (holding that "claims merely recite 'well-understood, routine conventional activit[ies],' either by requiring conventional computer activities or routine data-gathering steps"); *Content Extraction*, 776 F.3d at 1348 ("There is no 'inventive concept' in [plaintiff]'s use of a generic scanner and computer to perform well-understood, routine, and conventional activities commonly used in industry."); *Ultramercial*, 772 F.3d at 715–16 ("[T]he claimed sequence of steps comprises only 'conventional steps, specified at a high level of generality,' which is insufficient to supply an 'inventive concept.'").

As the Magistrate Judge correctly concluded after reviewing numerous Section 101 cases and analyzing the claims of the '379 Patent, determining whether claim elements were indeed conventional, routine, or well-known at the time of invention "mostly involve[s] general historical observations, the sort of findings routinely made by courts deciding legal questions." R&R at 17. Accordingly, the Court should adopt the Magistrate Judge's recommendation that Defendants' Motion to Dismiss is ripe for adjudication.

## III. THE MAGISTRATE JUDGE CORRECTLY CONCLUDED THAT THE ASSERTED PATENT CLAIMS AN ABSTRACT IDEA.

Plaintiff presents three objections to the Magistrate Judge's finding that the '379 Patent claims an abstract idea: "(1) the claims of the '379 Patent are tangible and concrete—not abstract, (2) the claims do not fall within any recognized category of abstract ideas as set forth by the Supreme Court and Federal Circuit, and (3) the 'quick look' at the '379 Patent ignores the actual claimed inventions." Obj. at 10. Plaintiff is wrong on every point. We first address Plaintiff's third argument, as this relates directly to the first step of the *Mayo/Alice* test.

A. <u>The First Step of the *Mayo/Alice* Test Utilizes a "Quick Look" to Determine the "Purpose of the Claim."</u>

Plaintiff is first wrong that the "quick look" or "purpose of the claim" test is an improper means for determining whether a claim is drawn to an abstract idea.  The Magistrate Judge fully considered and properly rejected this argument in his Report and Recommendation.  R&R at 13–14.  The Magistrate Judge's approach is exactly how the Supreme Court, the Federal Circuit, and district courts across the country have decided dozens of Section 101 cases since *Mayo* and *Alice*.  For example, in *Internet Patents Corp. v. Active Network, Inc.*, the Federal Circuit stated that "we start [the Section 101 analysis] by ascertaining the *basic character* of the subject matter."  --- F.3d ----, 2015 WL 3852975, at *4 (Fed. Cir. June 23, 2015) (emphasis added).  That same decision looked to the first step of the Supreme Court's analysis in *Mayo* for guidance, noting that the Supreme Court "distilled" the patent-ineligible concept from the claims.  *Id.* at *3.  Similarly, in *Alice*, the Supreme Court distilled a four-step method claim down to its basic abstract concept of "intermediated settlement."  *See Alice*, 134 S. Ct. at 2355–56.  And in *Ultramercial*, the Federal Circuit looked to the "concept embodied by the majority of the limitations."  772 F.3d at 715.  In light of this clear precedent, Judge Ezra of the San Antonio Division of this District correctly stated the law when he wrote: "In determining whether a claim is directed to an abstract idea, courts look past the claim language to 'the purpose of the claim— in other words, what the invention is trying to achieve.'"  *Morales*, 2014 WL 7396568, at * 6 (quoting *Cal. Inst. of Tech. v. Hughes Commc'ns Inc.*, 59 F. Supp. 3d 974, 991 (C.D. Cal. 2014)).  Plaintiff's objection about the "quick look" test is incorrect and should be overruled.

B. <u>The '379 Patent Is Directed to the Abstract Idea of Dissemination of Regionally Broadcasted Content to Users Outside the Region.</u>

Plaintiff's objection that the claims are "tangible and concrete" is similarly without merit.  Obj. at 7.  Under Plaintiff's view, *no* computer-implemented inventions could be abstract

because they all use tangible and concrete computer systems and networks. *See id.* (arguing the alleged invention is concrete and tangible because it uses cell phones and downloadable applications). That is, of course, not the law. In *Alice*, the Supreme Court rejected exactly this argument:

> The fact that a computer "necessarily exist[s] in the physical, rather than purely conceptual, realm" is beside the point. There is no dispute that a computer is a tangible system (in § 101 terms, a "machine"), or that many computer-implemented claims are formally addressed to patent-eligible subject matter. But if that were the end of the § 101 inquiry, an applicant could claim any principle of the physical or social sciences by reciting a computer system configured to implement the relevant concept.

*Alice*, 134 S. Ct. at 2358–59.

The flaw in Plaintiff's position is that it conflates both steps of the *Mayo/Alice* analysis. The key to the first step, as discussed in the section above, is finding the purpose of the claims. Consideration of the hardware and software implementing that purpose, however, is the province of step 2. *See id.* at 2357–60. The Magistrate Judge correctly concluded that the '379 Patent's claims are directed to the abstract idea of "dissemination of regionally broadcasted content to users outside the region." R&R at 14; *see also Affinity Labs of Tex., LLC v. Clear Channel Broad., Inc.*, No. 1:12-CV-205-LY, 2014 WL 1699063, at *6 (W.D. Tex. Apr. 29, 2014) ("The invention's purported purpose is to allow a user to consume 'regionally broadcasted content' when the user is physically located outside of the range of that regionally broadcasted content."). Affinity's "tangible and concrete" objection, therefore, also should be overruled.

C. Neither the Supreme Court Nor the Federal Circuit Have Limited Abstract Ideas to the Two Categories Plaintiff Identifies.

Plaintiff's Objection asserts that unpatentable abstract ideas must be limited to two narrow categories, namely "mathematical algorithms" and "fundamental economic practices," Obj. at 9, an argument that the Magistrate Judge correctly rejected, R&R at 13. Notably, the

category of "conventional business practices" appeared in Plaintiff's earlier arguments, *see* Obj. at 1; Affinity Labs' Opposition to Defendants' Motion to Dismiss, Dkt. No. 25, at 6, but that category has now disappeared from Plaintiff's lexicon since the Magistrate Judge's correct conclusion that "the dissemination of regionally broadcast content to users outside the region . . . is a well-known, longstanding, commercial business practice," R&R at 16–17 (citing historical observations and facts that are not subject to reasonable dispute).[3]

In any event, neither the Supreme Court nor the Federal Circuit has limited the categories of unpatentable abstract ideas to just mathematical algorithms and fundamental economic practices.  Indeed, the Supreme Court stated in *Alice* that it "need not labor to delimit the precise contours of the 'abstract ideas' category."  134 S. Ct. at 2357.  Even the *DDR Holdings, LLC v. Hotels.com, L.P.* decision on which Plaintiff so heavily relies, Obj. at 9, 13, refutes Plaintiff's argument.  773 F.3d 1245 (Fed. Cir. 2014).  In *DDR Holdings*, the Federal Circuit explicitly stated that the patent at issue did not fit in either of Plaintiff's two "unpatentable" categories; yet that finding did not end the Section 101 inquiry as it would have if these two categories were exclusive, as Plaintiff asserts.  *Id.* at 1257.  Moreover, the recent *Internet Patents* decision involved "the idea of retaining information in the navigation of online forms," which also falls outside of Plaintiff's limited categories, and still the Federal Circuit in that case invalidated the patent under Section 101.  2015 WL 3852975, at *5.

---

[3] Indeed, Plaintiff raised no objections to Magistrate Judge Manske's citation of, for example, the TBS superstation broadcasting Braves games to baseball fans outside Atlanta in the 1970s, and the WGN superstation broadcasting Cubs games to baseball fans outside Chicago in the 1980s, and long personal experience listening to radio broadcasts of baseball, basketball, football, and hockey games from other regions.  *See* R&R at 16–17.  These are facts that are generally known and not subject to reasonable dispute.  *See* Fed. R. Evid. 201(b); *see also* Motions Hearing Tr. at 161 (May 12, 2015) (Magistrate Judge specifically noting that parties should raise objections to judicially noticed facts in objections to the Report and Recommendation).

Plaintiff's objections regarding step 1 of the *Mayo*/*Alice* test are legally unfounded.  The Court should therefore reject Plaintiff's objections and adopt the Magistrate Judge's analysis on this step of the Section 101 test.

**IV.   THE MAGISTRATE JUDGE CORRECTLY CONCLUDED THAT THE ASSERTED PATENT DOES NOT CONTAIN AN "INVENTIVE CONCEPT."**

Plaintiff presents five objections to the Magistrate Judge's conclusion that the '379 Patent fails to recite an "inventive concept": "(1) the Magistrate Judge applied a technological arts test that is not supported by controlling case law, (2) the over-the-air downloadable application was not generic, conventional, well-known, or routine as of March 2000, (3) the claim elements as a whole were not generic, conventional, well-known, or routine as of March 2000, (4) the disputes on this topic at least raise factual issues that should not be decided on the pleadings, and (5) the claims of the '379 Patent surpass [sic] the machine-or-transformation test."  Obj. at 16.  Each of these arguments is wrong as well.

A.   The Magistrate Judge Correctly Applied a "Technological Arts" Test Based on the Supreme Court's *Alice* Decision.

Plaintiff objects to the application of a "technological arts" test, Obj. at 10–11, and complains that the Magistrate Judge required that the claims of the '379 Patent describe how aspects of the invention are performed as part of that test, *id.* at 14.  The "technological arts" test that the Magistrate Judge applied is based on the Supreme Court's *Alice* decision from 2014.  Plaintiff's reliance on a 2008 decision to claim that "[n]o such test has ever been explicitly adopted by the Supreme Court," therefore, is misleading, at best.  *See* Obj. at 10.  As Judge Mayer stated in his concurrence in *Ultramercial*, "*Alice Corporation v. CLS Bank International*, for all intents and purposes, set out a technological arts test for patent eligibility," because *Alice* was a seminal decision that established the test for how courts should analyze Section 101 issues.  772 F.3d at 717 (Mayer, J., concurring) (citation omitted).  While Judge Mayer may have been

the one to use the name "technological arts test," that test unquestionably came from the Supreme Court. *See id.* at 721–23.

In applying the second step of the *Mayo*/*Alice* test, the Report and Recommendation relies on a number of district court decisions that examined whether the patent claims at issue "explain[] the 'how' as to the manner in which the inventive concept performs." R&R at 22. This is exactly the analysis performed by the Federal Circuit in *Internet Patents*, where the court agreed with the district court that "claim 1 contains no restriction on how the result is accomplished. The mechanism for maintaining the state is not described, although this is stated to be the essential innovation." 2015 WL 3852975, at *5. The Federal Circuit thus concluded that there was no inventive concept and that "the claim is directed to the *idea itself*—the abstract idea of avoiding loss of data." *Id.* (emphasis added).

Similarly, the Report and Recommendation concludes that the '379 Patent fails to describe how the "network based resource," "wireless cellular telephone device," or downloadable application with graphical user interface disseminate regionally broadcasted content to users outside the region. *See* R&R at 22–24. The '379 Patent is thus directed to the *idea itself* of disseminating regionally broadcasted content to users outside the region. As such, the Magistrate Judge correctly applied the appropriate legal analysis, regardless of what the test was named.

B. The Over-the-Air Downloadable Application with a Graphical User Interface Fails to Provide an "Inventive Concept."

Plaintiff contends that the over-the-air downloadable application with a graphical user interface ("GUI") is the inventive concept of the '379 Patent because it was not known at the time of the invention and it solves a technical problem, just like the claims upheld by the Federal Circuit in *DDR Holdings*. Obj. at 12–13. But as the Magistrate Judge correctly found, this

11

downloadable application element cannot provide an "inventive concept" for the '379 Patent because it is not an "integral" or "significant part" of the invention.  R&R at 22–23.

Plaintiff admitted during the motions hearing that the '379 Patent does not provide any inventive concept for streaming regional broadcast content over the Internet to personal computers, as opposed to cellular phones.  *See* Motions Hearing Tr. at 143–45; *see also* R&R at 29.  This admission alone demonstrates that the concept and technology for achieving the purpose of the '379 Patent—making local broadcast content available outside of the local area to Internet-connected devices—already existed.  As the Magistrate Judge correctly concluded, the '379 Patent merely takes that existing idea and technology, "and says 'apply it' to a wireless, cellular telephone device acting as a generic computer."  R&R at 29.  Because the technology for achieving the purpose of the invention already existed, the over-the-air downloadable application with a GUI cannot be an integral part of the invention.  Indeed, the '379 Patent's specification makes clear that there is nothing either unique or special about the over-the-air downloadable application software.  *See* '379 Patent col. 10 ll. 6–8 ("The present invention is not limited to any one specific type of software and may be realized in plurality of ways as can be appreciated by those skilled in the art.").

In addition, Plaintiff readily admits that the over-the-air downloadable application element was not part of the original claims, but was only added later during prosecution to overcome a prior art rejection.  Obj. at 12.  This prosecution history demonstrates that the over-the-air downloadable application has nothing to do with achieving the abstract idea of making

local broadcast content available outside of the local area, and this further undermines Plaintiff's argument that the application is an integral part of the invention.[4]

The Magistrate Judge therefore correctly concluded that the over-the-air downloadable application is nothing like the inventive concept in *DDR Holdings*.  The claims in that case "*specify how* interactions with the Internet are manipulated to yield a desired result—a result that *overrides the routine and conventional sequence of events* ordinarily triggered by the click of a hyperlink."  *DDR Holdings*, 773 F.3d at 1258 (emphases added).  In contrast, as discussed in the section above, neither the '379 Patent's claims nor its specification explain how the downloadable application disseminates content to a remote user, and nothing suggests that the application operates in anything but a conventional or ordinary manner.  *See also* Defendants' Reply in Support of Their Motion to Dismiss ("Reply Br."), Dkt. No. 33, at 9 (citing the face of the '379 Patent for known downloadable applications and wireless (*i.e.*, over-the-air) transmission).  Plaintiff's Objection also states, in a conclusory fashion, that the over-the-air downloadable application with a GUI solved a technical problem, but fails to explain what that problem was or how it was solved.  *See* Obj. at 13.[5]

Thus, the over-the-air downloadable application with a GUI, tacked onto the claims as a late addition to the patent application, represents nothing more than "insignificant '[pre]-solution activity'"—an element detached from the main idea of disseminating regionally broadcast content to users outside the region—"which is . . . not sufficient to transform an otherwise patent-ineligible abstract idea into patent-eligible subject matter."  *Ultramercial*, 772 F.3d at 716

---

[4] Plaintiff's reliance on the file history and overcoming prior art rejections simply demonstrates its conflating of Section 101 analysis with Section 102/103 analysis.

[5] Furthermore, *DDR Holdings* does not stand for the proposition that a claim "necessarily rooted in computer technology" is patentable, as Plaintiff suggests.  *See* Obj. at 13.  Otherwise, claims such as those in *Internet Patents*, which involved navigation of online forms in Web browsers, would not have been held patent ineligible.  *See* 2015 WL 3852975, at *5.

(first alteration in original); *see also Bilski v. Kappos*, 561 U.S. 593, 610–11 (2010) ("[*Parker v.] Flook* stands for the proposition that the prohibition against patenting abstract ideas cannot be circumvented by . . . adding insignificant postsolution activity." (quotation marks omitted)).

C.   Considered As a Whole, Each Claim of the '379 Patent Fails to Add Anything That Is Not Already Present When the Elements Are Considered Separately.

Plaintiff alleges that the Magistrate Judge failed to consider each claim of the '379 Patent as a whole, but instead only considered each element individually.  Obj. at 15.  This objection ignores the fact that the Report and Recommendation clearly states that it considered the claim elements both "individually" *and* "as an ordered combination," *see* R&R at 18, 26, just as the law requires, *see Alice*, 134 S. Ct. at 2355.

Plaintiff further argues that because the Patent Office allowed the '379 Patent's claims over the prior art, the claims as a whole must also be patentable under Section 101.  Obj. at 15.  But this argument demonstrates Plaintiff's continued confusion between "inventive concept" issues under Section 101 and novelty and obviousness issues under Sections 102 and 103.  *See* Obj. at 11, 15 (citing to prosecution history and the McAlexander Declaration, and calling the '379 Patent "new, novel, and non-obvious"); Reply Br., Dkt. No. 33, at 3–4 (noting similar confusion of issues in Plaintiff's Opposition Brief).  Indeed, "[g]roundbreaking, innovative, or even brilliant discovery does not by itself satisfy the § 101 inquiry." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2117 (2013).  The Supreme Court's mandate that claims be considered "as an ordered combination" is the search for whether the claims "ad[d] [some]thing . . . that is not already present when the steps are considered separately." *Alice*, 134 S. Ct. at 2359 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1298 (2012)).  Plaintiff's Objection fails to specify what the combination of elements adds that is not already present when the well-known and conventional elements are

14

considered individually.  *See* Obj. at 15.  Thus, as the Magistrate Judge correctly concluded, the claim elements, considered "either individually or as an ordered combination, all describe conventional, well known and routine concepts, accomplished using computer hardware and software recited in 'purely functional and generic' terms."  R&R at 26.

> D. The "Inventive Concept" Inquiry Does Not Present Any Factual Issues that Preclude Granting Defendants' Motion.

Plaintiff again asserts that factual issues in step 2 of the *Mayo/Alice* test preclude deciding the patentability of the '379 Patent at this stage of the case.  Obj. at 16.  But other than an undefined over-the-air downloadable application with a GUI, Plaintiff failed to specify in its Objection what other factual issues exist, relying instead on generalized statements that are insufficient to satisfy Rule 72(b)(2)'s requirement of "specific written objections."  In any event, regarding the over-the-air downloadable application with a GUI and the other elements of the '379 Patent, the Magistrate Judge appropriately relied on the specification and judicial notice of general historical observations in concluding that the elements of the '379 Patent were well-known, conventional, and routine.  *See* R&R at 19–21; *see also Alice*, 134 S. Ct. at 2360 (holding that computer hardware in claims was generic); *Internet Patents*, 2015 WL 3852975, at *5 (citing the patent specification for "conventional," "common," and "well-known" claim elements); *OIP Techs.*, 2015 WL 3622181, at *3 (concluding summarily that computer functions are "'well-understood, routine, conventional activit[ies]' previously known to the industry").

> E. The '379 Patent Fails the Machine-or-Transformation Test.

Plaintiff also argues that the Magistrate Judge erred by finding that the '379 Patent fails the machine-or-transformation test.[6]  Obj. at 16.  Plaintiff contends that the '379 Patent recites a

---

[6] Plaintiff admitted during the motions hearing that its arguments concerning the machine-or-transformation test rely solely on the "machine" prong of the test, and that Plaintiff was not relying on the "transformation" prong.  *See* Motions Hearing Tr. at 148–49.

"specific combination of hardware and software components," *id.*, but that is not the test for whether a claim passes the "machine" prong of the test. Rather, the proper test is whether the patent "tie[s] the claims to a novel machine." *Ultramercial*, 772 F.3d at 717. Here, the '379 Patent is not tied to a "novel machine." Rather, as the Magistrate Judge found, the '379 Patent relies on conventional computer, network, and wireless cellular telephone hardware and software to perform their typical functions. *See* R&R at 18–21. As the Federal Circuit has held, general purpose computers and the Internet do not satisfy the machine-or-transformation test. *Ultramercial*, 772 F.3d at 716–17.

## V.   THE MAGISTRATE JUDGE CORRECTLY ANALYZED THE '379 PATENT'S DEPENDENT CLAIMS.

Plaintiff next contends that the Magistrate Judge's analysis of the '379 Patent's dependent claims was conclusory and inadequate. Obj. at 17. But where dependent claims fail to add any inventive concept, it is customary for courts to address them only briefly, if at all, in a Section 101 analysis. *See Internet Patents*, 2015 WL 3852975, at * 5–6; *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, --- F.3d ----, 2015 WL 3634649, at *6 (Fed. Cir. June 12, 2015); *Content Extraction*, 776 F.3d at 1348–49; *Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1007 (Fed. Cir. 2014). Indeed, in *Ariosa* the Federal Circuit dispensed with numerous claims with no analysis at all. *See* 2015 WL 3634649, at *6 ("None of the remaining asserted dependent or independent claims differ substantially from [the claims explicitly addressed].").

Here, the Report and Recommendation sets forth for each dependent claim why those claims "add only trivial limitations insufficient to confer patentability." R&R at 24–26. Thus, the Magistrate Judge fully satisfied his responsibility to consider each claim separately, and this objection, too, should be overruled.

## VI.   PLAINTIFF'S PREEMPTION OBJECTION CANNOT SAVE THE '379 PATENT.

Finally, Plaintiff objects to the Magistrate Judge's preemption analysis.  Obj. at 18–20.
Not only is this objection flawed, but following the Federal Circuit's recent decision in *Ariosa
Diagnostics, Inc. v. Sequenom, Inc.*, the objection is also moot.  --- F.3d ----, 2015 WL 3634649,
at *7 (Fed. Cir. June 12, 2015).  Plaintiff argues that "the claimed inventions of the '379 Patent
do not preempt all avenues of broadcasting regional content to an area outside the region."  Obj.
at 19.  The Magistrate Judge correctly rejected this argument, R&R at 27, because "limiting the
use of an abstract idea 'to a particular technological environment'" "is not enough for patent
eligibility."  *Alice*, 134 S. Ct. at 2358 (quoting *Bilski*, 561 U.S. at 610–11).  Furthermore, the
Supreme Court has consistently expressed the concern that patent eligibility not "depend simply
on the draftsman's art."  *Id.* at 2359 (quoting *Parker v. Flook*, 437 U.S. 584, 593 (1978)).
Allowing a field of use limitation to confer patent eligibility would create exactly that sort of
dependence—a skilled patent drafter could craft a set of claims that together would preempt an
entire area by limiting each individual claim to a specific narrow field.  This could lead to the
"ten patents" cited in the Magistrate Judge's Report and Recommendation, thus extending
Plaintiff's reach to numerous other devices and preempting an entire field.  *See* R&R at 27.  The
fact that Plaintiff failed to claim those other devices does not render the one they did claim
valid.[7]

Regardless, the Court does not need to address these separate preemption questions. The
Federal Circuit's recent *Ariosa* decision, issued after the Magistrate Judge's Report and
Recommendation, explicitly held (1) "the absence of complete preemption does not demonstrate

---

[7] Plaintiff also makes a general allegation that the Magistrate Judge made "unsupported and
inherent claim construction determinations and factual findings in his preemption analysis," Obj.
at 20, but Plaintiff fails to identify any specific claim constructions or findings, let alone explain
how they would alter the legal analysis or the result.

patent eligibility," and (2) "questions on preemption are inherent in and resolved by the § 101 analysis," such that "[w]here a patent's claims are deemed only to disclose patent ineligible subject matter under the *Mayo* framework, . . . preemption concerns are fully addressed and made moot." 2015 WL 3634649, at * 7.  Thus, the focus of the Magistrate Judge's Section 101 analysis is the two-step *Mayo*/*Alice* test, and having concluded that those two steps are satisfied and the claims are patent-ineligible, then no additional preemption analysis is needed.  *See id.*

## CONCLUSION

As the Magistrate Judge's Report and Recommendation sets forth, the claims of the '379 Patent are directed to the abstract idea of "dissemination of regionally broadcasted content to users outside the region," R&R at 14, and "do not contain an inventive concept" sufficient to confer patentability, *id.* at 24.  The '379 Patent thus fails to claim patentable subject matter under 35 U.S.C. § 101 and is invalid.  Defendants therefore respectfully request that the Court overrule Plaintiff's objections, adopt the Magistrate Judge's thorough and considered Report and Recommendation, and dismiss this case with prejudice under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Dated: June 30, 2015                Respectfully submitted,

By: */s/ Hilary L. Preston*
David B. Weaver (TBN 00798576)
Jeffrey T. Han (TBN 24069870)
**VINSON & ELKINS LLP**
2801 Via Fortuna, Suite 100
Austin, Texas 78746-7568
Tel: (512) 542-8400
Fax: (512) 236-3218
dweaver@velaw.com
jhan@velaw.com

Hilary L. Preston (TBN 24062946)
**VINSON & ELKINS LLP**
666 Fifth Avenue, 26th Floor
New York, New York 10103-0040
Tel: (212) 237-0000
Fax: (212) 237-0100
hpreston@velaw.com

*Attorneys for Defendants NBA Media Ventures, LLC; Turner Digital Basketball Services, Inc.; NHL Enterprises, L.P.; NHL Enterprises, Inc.; and NHL Interactive CyberEnterprises, LLC*

By: */s/ Ryan K. Yagura*
Darin W. Snyder (*pro hac vice*)
CA S.B. #136003
**O'Melveny & Myers LLP**
Two Embarcadero Center, 28th Floor
San Francisco, California  94111-3823
Tel:  (415) 984-8700
Fax:  (415) 984-8701
dsnyder@omm.com

Ryan K. Yagura  (TBN 240755933)
CA S.B. #197619
Brian M. Cook (*pro hac vice*)
CA S.B. #266181
**O'Melveny & Myers LLP**
400 South Hope Street
Los Angeles, California  90071-2899
Tel:  (213) 430-6000
Fax:  (213) 430-6407
ryagura@omm.com
bcook@omm.com

Hana O. Chen (*pro hac vice*)
CA S.B. #300846
**O'Melveny & Myers LLP**
610 Newport Center Drive
Newport Beach, California 92660
Tel: (949) 823-6900
Fax: (949) 823-6994
hchen@omm.com

*Attorneys for Defendants DIRECTV, LLC and*
*DIRECTV Digital LLC*

By: */s/ Nathan K. Cummings*
Lindsy Solanki (TBN 24055094)
**COOLEY LLP**
3175 Hanover Street
Palo Alto, CA 94304
Tel: (650) 843-5000
Fax: (650) 843-7400
lsolanki@cooley.com

Christopher C. Campbell (Va. Bar No. 36244)
Nathan K. Cummings (Va. Bar No. 41372)
**COOLEY LLP**
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, Virginia 20190-5656
Tel:  (703) 456-8000
Fax:  (703) 456-8100
ccampbell@cooley.com
ncummings@cooley.com

*Attorneys for Defendants MLB Advanced Media,*
*L.P. and MLB Advanced Media, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of June, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and I hereby certify that this instrument has been served using the CM/ECF system on the counsel of record.

 */s/ Hilary L. Preston*
Hilary L. Preston

21

US 3587983