# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## NOTICE OF ENTRY OF
## JUDGMENT ACCOMPANIED BY OPINION

### OPINION FILED AND JUDGMENT ENTERED: 09/23/2016

The attached opinion announcing the judgment of the court in your case was filed and judgment was entered on the date indicated above. The mandate will be issued in due course.

Information is also provided about petitions for rehearing and suggestions for rehearing en banc. The questions and answers are those frequently asked and answered by the Clerk's Office.

Costs are taxed against the appellant in favor of the appellee under Rule 39. The party entitled to costs is provided a bill of costs form and an instruction sheet with this notice.

The parties are encouraged to stipulate to the costs. A bill of costs will be presumed correct in the absence of a timely filed objection.

Costs are payable to the party awarded costs. If costs are awarded to the government, they should be paid to the Treasurer of the United States. Where costs are awarded against the government, payment should be made to the person(s) designated under the governing statutes, the court's orders, and the parties' written settlement agreements. In cases between private parties, payment should be made to counsel for the party awarded costs or, if the party is not represented by counsel, to the party pro se. Payment of costs should not be sent to the court. Costs should be paid promptly.

If the court also imposed monetary sanctions, they are payable to the opposing party unless the court's opinion provides otherwise. Sanctions should be paid in the same way as costs.

Regarding exhibits and visual aids: Your attention is directed Fed. R. App. P. 34(g) which states that the clerk may destroy or dispose of the exhibits if counsel does not reclaim them within a reasonable time after the clerk gives notice to remove them. (The clerk deems a reasonable time to be 15 days from the date the final mandate is issued.)

FOR THE COURT

/s/ Peter R. Marksteiner

Peter R. Marksteiner
Clerk of Court

cc: Patrick M. Arenz
Christopher C. Campbell
Nathan K. Cummings
Christopher Granaghan
Jeffrey Ta-Hwa Han
Brenda L. Joly
Benjamen Linden
Cyrus Alcorn Morton
John B. Palmer III
Hilary L. Preston
Ronald James Schutz
Darin W. Snyder
David B. Weaver

15-1845 - Affinity Labs of Texas, LLC v. DIRECTV, LLC
United States District Court for the Western District of Texas, Case No. 6:15-cv-00030-WSS, 6:15-cv-00031-WSS, 6:15-cv-00032-WSS, 6:15-cv-00033-WSS

# United States Court of Appeals for the Federal Circuit

———————————

**AFFINITY LABS OF TEXAS, LLC,**
*Plaintiff-Appellant*

**v.**

**DIRECTV, LLC, DIRECTV DIGITAL LLC, MLB ADVANCED MEDIA, INC., MLB ADVANCED MEDIA, L.P., NBA MEDIA VENTURES, LLC, TURNER DIGITAL BASKETBALL SERVICES, INC., NHL INTERACTIVE CYBER ENTERPRISES, LLC, NHL ENTERPRISES, INC., NHL ENTERPRISES, L.P.,**
*Defendants-Appellees*

———————————

2015-1845, 2015-1846, 2015-1847, 2015-1848

———————————

Appeals from the United States District Court for the Western District of Texas in Nos. 6:15-cv-00030-WSS, 6:15-cv-00031-WSS, 6:15-cv-00032-WSS, 6:15-cv-00033-WSS, Judge Walter S. Smith, Jr.

———————————

Decided: September 23, 2016

———————————

CYRUS ALCORN MORTON, Robins Kaplan LLP, Minneapolis, MN, argued for plaintiff-appellant. Also represented by RONALD JAMES SCHUTZ, PATRICK M. ARENZ, BRENDA L. JOLY, BENJAMEN LINDEN.

DAVID B. WEAVER, Baker Botts, LLP, Austin, TX, argued for all defendants-appellees. Defendants-appellees NBA Media Ventures, Turner Digital Basketball Services, Inc., NHL Interactive Cyber Enterprises, LLC, NHL Enterprises, Inc., NHL Enterprises, L.P. also represented by CHRISTOPHER GRANAGHAN; JEFFREY TA-HWA HAN, Vinson & Elkins LLP, Austin, TX; HILARY L. PRESTON, New York, NY.

DARIN W. SNYDER, O'Melveny & Myers LLP, San Francisco, CA, for defendants-appellees DIRECTV, LLC, DIRECTV Digital LLC.

NATHAN K. CUMMINGS, Cooley LLP, Reston, VA, for defendants-appellees MLB Advanced Media, Inc., MLB Advanced Media, L.P.

_____

Before PROST, *Chief Judge,* BRYSON and WALLACH, *Circuit Judges.*

BRYSON, *Circuit Judge.*

I

Affinity Labs of Texas, LLC, is the owner of U.S. Patent No. 7,970,379 ("the '379 patent"). The patent contains two independent claims, one a system claim and the other a method claim. The claims are directed to streaming regional broadcast signals to cellular telephones located outside the region served by the regional broadcaster. Representative claim 1 of the '379 patent, the independent system claim, recites as follows:

1. A broadcast system, comprising:

a network based resource maintaining information associated with a network available representation of a regional broadcasting channel that can be selected by a user of a wireless cellular telephone device; and

a non-transitory storage medium including an application configured for execution by the wireless cellular telephone device that when executed, enables the wireless cellular telephone device:

to present a graphical user interface comprising at least a partial listing of available media sources on a display associated with the wireless cellular telephone device, wherein the listing includes a selectable item that enables user selection of the regional broadcasting channel;

to transmit a request for the regional broadcasting channel from the wireless cellular telephone device; and

to receive a streaming media signal in the wireless cellular telephone device corresponding to the regional broadcasting channel, wherein the wireless cellular telephone device is outside of a broadcast region of the regional broadcasting channel, wherein the wireless cellular telephone device is configured to receive the application via an over the air download.

Stripped of excess verbiage, claim 1 is directed to a broadcast system in which a cellular telephone located outside the range of a regional broadcaster (1) requests and receives network-based content from the broadcaster via a streaming signal, (2) is configured to wirelessly download an application for performing those functions, and (3) contains a display that allows the user to select particular content. [1]

---

[1]    Affinity has not separately argued the patentability of any of the other claims of the '379 patent.  Although Affinity asserts that the district court erred by conducting a "conclusory analysis of the '379 patent['s] dependent claims," the parties agreed at the hearing before the

Affinity sued the nine defendants, alleging that they infringed the '379 patent by marketing a system that allows customers to receive regional radio broadcasts on their cellphones even when their cellphones are outside the regions reached by the stations' broadcast signals. The defendants moved to dismiss the complaints for failure to state a claim, arguing that the asserted claims were not directed to patentable subject matter.

The magistrate judge recommended that the motion to dismiss be granted. Following the two-stage inquiry for patentability set forth by the Supreme Court in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289 (2012), and *Alice Corp. v. CLS Bank International,* 134 S. Ct. 2347 (2014), the magistrate judge found that the '379 patent was directed to an "abstract idea" and that the claims did not contain an "inventive concept."

The purpose of the '379 patent, the magistrate judge explained, "is the dissemination of regionally broadcasted content to users outside the region." That purpose, he held, is a "fundamental economic and conventional business practice" that is both "well-known and historically long-standing"; he therefore concluded that the claims were directed to an abstract idea.

The magistrate judge next found that the claims of the '379 patent do not contain an inventive concept such that they do more than claim the ineligible idea itself. He

---

magistrate judge that claim 1 of the '379 patent was representative. In light of that concession and Affinity's failure to present "any meaningful argument for the distinctive significance of any claim limitations other than those included" in claim 1, *Electric Power Group, LLC v. Alstom S.A.*, No. 2015-1778 (Fed. Cir. Aug. 1, 2016), slip op. at 4, we treat claim 1 as representative of all the claims of the '379 patent for purposes of this appeal.

explained that the patent "merely takes the abstract idea . . . and applies it to a generic, electronic device, in this case—a wireless cellular telephone."  He then concluded that the components of claim 1 are merely "routine and generic processing and storing capabilities of computers generally," and that the claimed functions—storing information in memory, executing a program, and sending and receiving data—can all be performed by a generic computer:  "There is not a non-generic function or component contained in the claims that sets forth the blueprint with any degree of specificity of how to disseminate regional broadcast content to a user outside the region over a wireless, cellular telephone device."

In response to Affinity's assertion that the downloadable application is an inventive concept, the magistrate judge observed that the patent "merely states that the application 'enables' the device to present a graphical user interface so a user can select what data that user wants to stream"; the patent is "devoid of any teaching or blueprint explaining how the device can do what it purports to do."  The "bottom line," he explained, "is that Claim 1 takes the abstract idea and says 'apply it' to a wireless, cellular telephone device acting as a generic computer."

The magistrate judge also rejected Affinity's argument based on the graphical user interface limitation in claim 1.  He ruled that the graphical user interface limitation merely recites a generic computer component and does not contribute an inventive concept to the claim.

The district court accepted the magistrate judge's recommendation and entered judgment against Affinity. The court agreed with the magistrate judge that the '379 patent is directed to an abstract idea.  In particular, the court agreed that the purpose of the claimed invention— to disseminate regionally broadcast content to users outside the region—is a well-known, longstanding busi-

ness practice, and that the claims directed to that purpose are not tangible and concrete. The court also agreed that the claimed "downloadable application with graphical user interface" does not qualify as an "inventive concept."

## II

The framework for determining whether a particular patent claim is directed to patentable subject matter is by now familiar. Section 101 of the Patent Act provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has held that the broad language of that provision is subject to an implicit exception for "laws of nature, natural phenomena, and abstract ideas," which are not patentable. *Alice*, 134 S. Ct. at 2354.

The Supreme Court has devised a two-stage framework to determine whether a claim falls outside the scope of section 101. The prescribed approach requires a court to determine (1) whether the claim is directed to a patent-ineligible concept, i.e., a law of nature, a natural phenomenon, or an abstract idea, and if so, (2) whether the elements of the claim, considered "both individually and 'as an ordered combination,'" add enough to "'transform the nature of the claim' into a patent-eligible application." *Alice*, 134 S. Ct. at 2355 (quoting *Mayo*, 132 S. Ct. at 1297-98). In the context of claims that are challenged as containing only abstract ideas, those two stages are typically referred to as the "abstract idea" step and the "inventive concept" step.

The "abstract idea" step of the inquiry calls upon us to look at the "focus of the claimed advance over the prior art" to determine if the claim's "character as a whole" is directed to excluded subject matter. The "inventive concept" step requires us to look with more specificity at

what the claim elements add, in order to determine "whether they identify an 'inventive concept' in the application of the ineligible subject matter" to which the claim is directed. *Elec. Power Grp., LLC v. Alstom S.A.*, No. 2015-1778 (Fed. Cir. Aug. 1, 2016), slip op. at 6; *see also Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016); *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1375-76 (Fed. Cir. 2016); *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015).

We have acknowledged that "precision has been elusive in defining an all-purpose boundary between the abstract and the concrete." *Internet Patents*, 790 F.3d at 1345. The inquiry is not an unbounded one, however. This court has applied the two-stage *Mayo/Alice* inquiry in numerous cases during the four years since the Supreme Court's decision in *Mayo*, and those decisions have provided substantial guidance in determining whether claims are unpatentable under the "abstract idea" rubric. Viewing this case in light of the principles set forth by the Supreme Court and applied by this court, we are persuaded that the claims at issue in this case fall on the unpatentable side of the line.

## A

The concept of providing out-of-region access to regional broadcast content is an abstract idea, as that term is used in the section 101 context. It is a broad and familiar concept concerning information distribution that is untethered to any specific or concrete way of implementing it.

The practice of conveying regional content to out-of-region recipients has been employed by nearly every form of media that has a local distribution. It is not tied to any particular technology and can be implemented in myriad ways ranging from the low-tech, such as by mailing copies of a local newspaper to an out-of-state subscriber, to the high-tech, such as by using satellites to disseminate

broadcasts of sporting events. As the magistrate judge noted, such out-of-region broadcasts have been commonplace since the late 20th century, in the form of systems delivering local radio and television broadcasts of sporting events to a national audience.

The '379 patent claims the function of wirelessly communicating regional broadcast content to an out-of-region recipient, not a particular way of performing that function. While independent claim 1 refers to general components such as a cellular telephone, a graphical user interface, and a downloadable application, the claimed invention is entirely functional in nature. It recites software in the form of "an application configured for execution by the wireless cellular telephone device" that performs three functions: (1) it presents a listing of available media choices on a display on the cellular telephone; (2) it enables the telephone "to transmit a request for the regional broadcasting channel"; and (3) it enables the telephone "to receive a streaming media signal in the . . . device corresponding to the regional broadcasting channel" when the device is outside of the range of the regional broadcaster. There is nothing in claim 1 that is directed to *how* to implement out-of-region broadcasting on a cellular telephone. Rather, the claim is drawn to the idea itself.

To be sure, the '379 patent claims the wireless delivery of regional broadcast content only to cellphones. In that sense, the claims are not as broad as the abstract idea underlying them, which could apply to the delivery of out-of-region content to any electronic device. That restriction, however, does not alter the result. All that limitation does is to confine the abstract idea to a particular technological environment—in this case, cellular telephones. The Supreme Court and this court have repeatedly made clear that merely limiting the field of use of the abstract idea to a particular existing technological environment does not render the claims any less abstract.

*See Alice*, 134 S. Ct. at 2358; *Mayo*, 132 S. Ct. at 1294; *Bilski v. Kappos*, 561 U.S. 593, 612 (2010); *Content Extraction & Transmission LLC v. Wells Fargo Bank*, *Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014).

Even if all the details contained in the specification were imported into the '379 claims, the result would still not be a concrete implementation of the abstract idea. In fact, the specification underscores the breadth and abstract nature of the idea embodied in the claims.

The specification describes the wireless communication of information to an electronic device at a high level of generality. In a passage describing figure 1 of the '379 patent, reproduced below, the specification states that the "general system for wirelessly communicating selective [sic] information to an electronic device" includes "a digital engine **101** coupled to a communications engine **102**," which is "remotely coupled to an electronic device **103**," and which "may be directly or indirectly coupled to storage device **105** operable to store information." '379 patent, col. 3, ll. 24-31. The communications engine "is communicatively coupled to digital engine **101** and operable to wirelessly communicate the selected information to electronic device **103**." *Id.*, col. 3, ll. 37-39.



The specification adds that "[c]ommunications engine **102** may be operable to wirelessly communicate selected information to electronic device **103** in a plurality of ways. The present invention advantageously allows for several different embodiments of wirelessly communicating selected audio information to electronic device **103** and is not limited to any specific configuration." *Id.*, col. 4, ll. 33-38. "Therefore, system **100** may be configured in a plurality of ways to communicate selected information to electronic device **103**." *Id.*, col. 6, ll. 8-10.

In the very brief discussion that is pertinent to out-of-region broadcasting claims, the specification states that "a user may want to listen to a radio station located in a remote location wherein conventional radio receivers could not receive the desired broadcast. For example, a person living in Houston, Tex. may not be able to receive a radio broadcast signal from a radio station in Seattle, Wash. utilizing a conventional radio receiver." '379 patent, col. 15, ll. 59-64.[2]

That passage describes the objective of making broadcast media available outside of its usual local distribution area. The passage is found in a portion of the specification that describes a flow chart with a series of steps relating to the provision of audio content over the Internet to an electronic device. '379 patent, col. 14, line 34, through col. 17, line 17. The first two steps in the flow chart read "User accesses web page via Internet" and "User selects audio information." The next pertinent step reads "Wirelessly communicate info to selected device."

---

[2]    Essentially the same specification has been used in a family of applications that have given rise to a series of issued patents dealing with different subject matter. The specification deals at length with subjects such as providing access to recorded music and Internet radio. Very little of the specification relates to the subject matter of the '379 patent claims.

Several additional steps relate to the customization and execution of a music playlist, not broadcast radio content. '379 patent, Fig. 8.

Nothing in the flow chart or the text of the specification provides any details regarding the manner in which the invention accomplishes the recited functions. The specification contains several other references to radio stations using the Internet to transmit their signals and communicating information by using digital broadcast signals, but it contains no further discussion of how the invention implements the delivery of ordinary broadcast radio signals to cellphones. *See Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012) (adding a "computer aided" limitation is insufficient to constitute a specific application where "[t]he claims are silent as to how a computer aids the method, the extent to which a computer aids the method, or the significance of a computer to the performance of the method").

The idea underlying the inventions in this case is akin to the ideas underlying the claims in several of this court's recent cases. In *In re TLI Communications LLC Patent Litigation*, 823 F.3d 607, 610 (Fed. Cir. 2016), the claimed invention was a "method for recording and administering digital images," which entailed "recording images using a digital pick up unit in a telephone unit," storing the images as digital images, transmitting the digital images and classification information to a server, and then storing the digital images in the server in light of the classification information.

The court held that the claim at issue in *TLI* was abstract in that it was drawn to the abstract idea of classifying an image and storing the image based on its classification. While the claim required the use of concrete, tangible components such as a telephone unit and a server, the court noted that the specification made clear that the recited physical components "merely provide a

generic environment in which to carry out the abstract idea of classifying and storing digital images in an organized manner." *Id.* at 611.

In addressing computer-implemented patents, the *TLI* court contrasted claims that are directed to an improvement in the functioning of a computer with claims that "simply add[] conventional computer components to well-known business practices" or consist only of "generalized steps to be performed on a computer using conventional computer activity." *Id.* at 612. The claims in *TLI* were not directed to an improvement in computer functionality, but were directed to "the use of conventional or generic technology in a nascent but well-known environment." *Id.* The court explained that the specification "does not describe a new telephone, a new server, or a new physical combination of the two," but instead "describes the system and methods in purely functional terms." *Id.* Thus, the court concluded, the claims "are not directed to a solution to a 'technological problem.'" *Id.* at 613.

Another case involving a similar abstract idea is *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014). The patent at issue in that case was drawn to a method for distributing copyrighted content over the Internet, in which a consumer would be given access to copyrighted material in exchange for viewing an advertisement and the advertiser would pay for the copyrighted content. The court held that "[t]he process of receiving copyrighted media, selecting an ad, offering the media in exchange for watching the selected ad, displaying the ad, allowing the consumer access to the media, and receiving payment from the sponsor of the ad all describe an abstract idea, devoid of a concrete or tangible application." *Id.* at 715.

Focusing on the additional limitations in the claims, the court held that most of them simply described "the abstract idea of showing an advertisement before deliver-

ing free content." *Id.* As for the remaining limitations, the court ruled that "the addition of merely novel or non-routine components to the claimed idea [does not] necessarily turn[] an abstraction into something concrete." Rather, the court explained, "any novelty in implementation of the idea is a factor to be considered only in the second step of the *Alice* analysis." *Id.*

Although the technology at issue in this case differs from that involved in *TLI* and *Ultramercial*, the analysis of the "abstract idea" step in those cases is instructive here. As in those cases, the patent in this case involves the conveyance and manipulation of information using wireless communication and computer technology. While the inventions in those cases involved tangible components, the components were conventional and were used in conventional ways. The same is true in this case, as the claimed cellular telephone is used to receive wireless signals, the claimed graphical user interface is used to display a menu of options to the user, and the claimed broadcasting system is used as the source of streaming content.

Affinity relies on two of this court's cases to support its contention that the claims in this case are not directed to an abstract idea. The first of those cases is *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014). The claims in that case recited systems used to enable host websites to avoid losing visitors when those visitors clicked on an advertisement on the host site. Instead of directing the visitor to the advertiser's website, the claimed invention provided for the host to present a composite web page to the visitor's computer having the "look and feel" of the host web page, along with content based on product information from the advertiser's product catalog.

We held that the patents in *DDR Holdings* were not ineligible under section 101. First, we noted that the

claims did not embody a fundamental economic principle or a longstanding commercial practice. Rather, the challenge of retaining website visitors was a novel one "particular to the Internet." *Id.* at 1257. Moreover, we held that the claimed invention did not simply use computers to serve a conventional business purpose; instead, the invention was "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *Id.* The invention entailed the storage of visually perceptible elements of numerous websites and the construction of new, hybrid web pages that merge the "content associated with the products of the third-party merchant with the stored 'visually perceptible elements' from the identified host website." *Id.*

The *DDR Holdings* court distinguished *Ultramercial* on the ground that the claims in *DDR Holdings* did not "broadly and generically claim 'use of the Internet' to perform an abstract business practice," but instead specified "how interactions with the Internet are manipulated to yield a desired result." *Id.* at 1258. Moreover, the *DDR Holdings* court observed that the claims in that case recited a specific way to automate the creation of a composite web page and did not preempt "every application of the idea of increasing sales by making two web pages look the same." *Id.* at 1259. In short, *DDR Holdings* dealt with a patent that required doing something *to* a web page, not simply doing something *on* a web page, a difference that the court regarded as important to the issue of patent eligibility.

That is not the case here. The patent in this case is not directed to the solution of a "technological problem," *Alice*, 134 S. Ct. at 2358, nor is it directed to an improvement in computer or network functionality. Instead, it claims the general concept of out-of-region delivery of broadcast content through the use of conventional devices, without offering any technological means of effecting that concept.

The second case relied on by Affinity is *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016). As in *DDR Holdings*, the focus of the claims in *Enfish* was on "an improvement to computer functionality itself, not on economic or other tasks for which a computer is used in its ordinary capacity." *Id.* at 1336. In this case, the claims are directed not to an improvement in cellular telephones but simply to the use of cellular telephones as tools in the aid of a process focused on an abstract idea. That is not enough to constitute patentable subject matter. *See Elec. Power Grp.*, slip op. at 8; *see also McRo, Inc. v. Bandai Namco Games Am. Inc.*, No. 15-1080 (Fed. Cir. Sep. 13, 2016), slip op. at 24 (claims held patent-eligible because they made "a specific asserted improvement in computer animation").

### B

In applying step two of the *Mayo/Alice* analysis, our task is to "determine whether the claims do significantly more than simply describe [the] abstract method" and thus transform the abstract idea into patentable subject matter. *Ultramercial,* 772 F.3d at 715. We look to see whether there are any "additional features" in the claims that constitute an "inventive concept," thereby rendering the claims eligible for patenting even if they are directed to an abstract idea. *Alice*, 134 S. Ct. at 2357. Those "additional features" must be more than "well-understood, routine, conventional activity." *Mayo*, 132 S. Ct. at 1298; *Ultramercial*, 772 F.3d at 715.

Upon examining claim 1 and the specification of the '379 patent, we find no "inventive concept" that transforms the abstract idea of out-of-region delivery of regional broadcasting into a patent-eligible application of that abstract idea. The claim simply recites the use of generic features of cellular telephones, such as a storage medium and a graphical user interface, as well as routine func-

tions, such as transmitting and receiving signals, to implement the underlying idea.

That is not enough. As the Supreme Court stated in *Alice*, "generic computer implementation" is insufficient to transform a patent-ineligible abstract idea into a patent-eligible invention. *Alice*, 134 S. Ct. at 2352, 2357. More generally, "simply appending conventional steps specified at a high level of generality" to an abstract idea does not make that idea patentable. *Mayo*, 132 S. Ct. at 1300. The '379 patent does not provide an inventive solution to a problem in implementing the idea of remote delivery of regional broadcasting; it simply recites that the abstract idea of remote delivery will be implemented using the conventional components and functions generic to cellular telephones.

Addressing the same general issue, this court in *Ultramercial* considered whether the steps set forth in the claims in that case embodied an inventive concept sufficient "to 'transform' the claimed abstract idea into patent-eligible subject matter." 772 F.3d at 715 (citing *Alice*, 134 S. Ct. at 2357). The court noted that the sequence of steps did not "do significantly more than simply describe [the] abstract method," *id.*, and that they were simply "conventional steps, specified at a high level of generality," *id.* at 716 (quoting *Alice*, 134 S. Ct. at 2357). The court added that the fact that some of those steps had not previously been employed in the art was not sufficient, standing alone, "to confer patent eligibility upon the claims at issue." *Id.* at 716.

Affinity asserts that the use of a downloadable application for presenting a graphical user interface on a cellular telephone capable of listing contents for streaming was novel as of the priority date of the patent. Even

assuming that is true, it does not avoid the problem of abstractness.[3]

The essential advance is not in the process of downloading applications, but only in the content of this particular application, and that is nothing but a functionally described display of information. That description does not cross out of the abstract idea category. *Elec. Power Grp.*, slip op. at 4. There is no further specification of a particular technology for getting the defined content displayed. Thus, the user-downloadable application does not constitute an inventive concept sufficient to render the claims patent-eligible.

This court employed similar analysis in *Content Extraction & Transmission LLC v. Wells Fargo Bank, National Ass'n*, 776 F.3d 1343 (Fed. Cir. 2014). That case involved patents directed to a method of (1) extracting data from hard copy documents using an automated digitizing unit such as a scanner, (2) recognizing specific information from the extracted data, and (3) storing that information in memory. *Id.* at 1315. The method could be used, for example, in an automated teller machine that recognizes information on a scanned check.

The *Content Extraction* court held that the claims before it were drawn to the abstract idea of data recognition and storage. *Id.* at 1346-47. In analyzing the "inventive concept" step, the court looked to whether the claims involved "more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Id.* at 1347-48 (quoting *Alice*, 134 S. Ct. at 2359). The court held that they did not. Rather, it noted,

---

[3]    As the eligibility finding does not turn on the novelty of using a user-downloadable application for the particular purpose set out in the claims, there was no error in the district court's not relying on Affinity's expert's testimony that it was a novel feature.

the claims merely recited the use of existing scanning and processing technology to recognize and store data from specific data fields. *Id.* at 1348. Because it concluded that "the basic character of [the plaintiff's] claims is the abstract idea of extracting and storing data from hard copy documents using generic scanning and processing technology," the court held the claims patent-ineligible. *Id.* at 1349.

The court in *Content Extraction* also held that dependent claims that added "well-known, routine, and conventional functions" did not transform the abstract idea into a patentable invention. *Id.* at 1349. The dependent claims at issue in that case closely parallel the dependent claims at issue in this one; like the dependent claims in *Content Extraction*, the dependent claims of the '379 patent all recite functions that are not inventive but simply constitute particular choices from within the range of existing content or hardware, such as specifying that the regional broadcast is FM radio or video content, that the graphical user interface displays song information, or that the storage medium buffers content.[4]

A second case addressing the "inventive concept" step in an analogous context is *Mortgage Grader, Inc. v. First Choice Loan Services, Inc.*, 811 F.3d 1314 (Fed. Cir. 2016). The claims in that case were directed to a computer-implemented system for enabling borrowers to shop anonymously for loans by having both lenders and borrowers upload information so that the borrower could identify a loan package for which he would be eligible and determine the cost before the lender was made aware of the buyer's identity. Viewing the claim limitations as a

---

[4]    In any event, as noted above, Affinity has not separately argued the patent eligibility of the dependent claims and thus has waived any argument that those claims should be analyzed separately from claim 1.

whole, the court held that the invention was directed to the abstract idea of "anonymous loan shopping," even though it involved computer-implemented communication of particular data between prospective borrowers and lenders. *Id.* at 1324.

The court rejected the argument that the computer components recited in the claims constituted an "inventive concept." It held that the claims added "only generic computer components such as an 'interface,' 'network,' and 'database,'" and that "recitation of generic computer limitations does not make an otherwise ineligible claim patent-eligible." *Id.* at 1324-25 (citations omitted). The court noted that nothing in the asserted claims purported to improve the functioning of the computer itself or "effect an improvement in any other technology or technical field." *Mortgage Grader*, 811 F.3d at 1325 (quoting *Alice*, 134 S. Ct. at 2359).

A third case similar to this one is *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363 (Fed. Cir. 2015). There, the court found that the patent claims were directed to the abstract idea of tailoring website content based on the viewer's location or the time of day when the user navigated to the website. *Id.* at 1369. The court then ruled that the recited "interactive interface" was not a "specific application of the abstract idea that provides an inventive concept." *Id.* at 1370.

Noting that the patentee did not assert that it had invented an interactive interface that manages web content, the court held that the interface limitation was simply "a generic computer element" and therefore did not constitute an "inventive concept" under the second part of the *Mayo/Alice* test. *Id.* at 1370-71; *see also Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1334 (Fed. Cir. 2015) ("conventional and well-known limitations involving a computer" are not an inventive concept); *Internet Patents*, 790 F.3d at 1346 ("a known idea, or one that is

routine and conventional, is not inventive in patent terms"); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) ("Beyond the abstract idea of offer-based price optimization, the claims merely recite 'well-understood, routine conventional activit[ies],' either by requiring conventional computer activities or routine data-gathering steps, [which] fail 'to "transform" the claimed abstract idea into a patent-eligible application.'") (quoting *Alice*, 134 S. Ct. at 2357, 2359, and *Mayo*, 132 S. Ct. at 1294, 1298)

In arguing that the '379 patent contains an "inventive concept," Affinity relies on this court's recent decision in *BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC*, No. 2015-1763 (Fed. Cir. June 27, 2016). The patent in that case was directed to systems for filtering content on the Internet. The claims provided for individually customizable filtering on a remote Internet service provider server.

Addressing the "abstract idea" step, the court held that filtering content is an abstract idea, and that it remained an abstract idea even when placed in the context of an Internet computer network. *Id.*, slip op. at 12-13. The court deferred its discussion of the specific limitations of the claims until the second step of the analysis. *Id.* at 13.

With respect to that step, the court held that the claims disclosed an "inventive concept," consisting of "the installation of a filtering tool at a specific location, remote from the end-users, with customizable filtering features specific to each end user." *Id.*, slip op. at 15. The invention took advantage of the ability of some Internet service providers to associate a request for Internet content with a specific individual account. Exploiting that capability, the invention was able to provide customized filtering by locating the filtering system on the Internet service provider's server. The specificity of the technical solution

provided by the claims in *BASCOM* stands in sharp contrast to the absence of any such specific technical solution in the claims of the '379 patent.

In applying the principles emerging from the developing body of law on abstract ideas under section 101, this court has noted that claims that are "so result-focused, so functional, as to effectively cover any solution to an identified problem" are frequently held ineligible under section 101. *Elec. Power Grp.*, slip op. at 12. That is true in this case, as the claims are drafted in a way that would effectively cover any wireless delivery of out-of-region broadcasting content to a cellular telephone via a network.

The only limitations on the breadth of the result-focused, functional claims in this case are (1) that the application used by the cellular telephone must be wirelessly downloadable, and (2) that the cellular telephone must have a graphical user interface display that allows the user to select the regional broadcasting channel. Those additional limitations describe purely conventional features of cellular telephones and the applications that enable them to perform particular functions. They therefore do not meaningfully limit the scope of the claims.

We conclude that the claims of the '379 patent are drawn to an abstract idea and therefore fail to meet the standard for eligibility under section 101.

**AFFIRMED**

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

<u>Questions and Answers</u>

**Petitions for Panel Rehearing (Fed. Cir. R. 40)**
**and**
**Petitions for Hearing or Rehearing En Banc (Fed. Cir. R. 35)**

---

*Q. When is a petition for panel rehearing appropriate?*

A. Petitions for panel rehearing are rarely considered meritorious. Consequently, it is easiest to first answer when a petition for panel rehearing is not appropriate. A petition for panel rehearing should not be used to reargue issues already briefed and orally argued. If a party failed to persuade the court on an issue in the first instance, they do not get a second chance. This is especially so when the court has entered a judgment of affirmance without opinion under Fed. Cir. R. 36, as a disposition of this nature is used only when the appellant/petitioner has utterly failed to raise any issues in the appeal that require an opinion to be written in support of the court's judgment of affirmance.

Thus, as a usual prerequisite, the court must have filed an opinion in support of its judgment for a petition for panel rehearing to be appropriate. Counsel seeking panel rehearing must be able to identify in the court's opinion a material error of fact or law, the correction of which would require a different judgment on appeal.

*Q. When is a petition for rehearing en banc appropriate?*

A. En banc decisions are extraordinary occurrences. To properly answer the question, one must first understand the responsibility of a three-judge merits panel of the court. The panel is charged with deciding individual appeals according to the law of the circuit as established in the court's precedential opinions. While each merits panel is empowered to enter precedential opinions, the ultimate duty of the court en banc is to set forth the law of the Federal Circuit, which merits panels are obliged to follow.

Thus, as a usual prerequisite, a merits panel of the court must have entered a precedential opinion in support of its judgment for a petition for rehearing en banc to be appropriate. In addition, the party seeking rehearing en banc must show that either the merits panel has failed to follow decisions of the Supreme Court of the United States or Federal Circuit precedential opinions, or that the

merits panel has followed circuit precedent, which the party seeks to have overruled by the court en banc.

*Q. How frequently are petitions for panel rehearing granted by merits panels or petitions for rehearing en banc granted by the court?*

A. The data regarding petitions for panel rehearing since 1982 shows that merits panels granted some relief in only three percent of the petitions filed. The relief granted usually involved only minor corrections of factual misstatements, rarely resulting in a change of outcome in the decision.

En banc petitions have been granted less frequently. Historically, the court has initiated en banc review in a few of the appeals decided en banc since 1982.

*Q. Is it necessary to have filed either of these petitions before filing a petition for certiorari in the U.S. Supreme Court?*

A. No. All that is needed is a final judgment of the Court of Appeals.

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

### INFORMATION SHEET

### FILING A PETITION FOR A WRIT OF CERTIORARI

There is no automatic right of appeal to the Supreme Court of the United States from judgments of the Federal Circuit. You must file a petition for a writ of certiorari which the Supreme Court will grant only when there are compelling reasons. (See Rule 10 of the Rules of the Supreme Court of the United States, hereinafter called Rules.)

**Time.** The petition must be filed in the Supreme Court of the United States within 90 days of the entry of judgment in this Court or within 90 days of the denial of a timely petition for rehearing. The judgment is entered on the day the Federal Circuit issues a final decision in your case. [The time does not run from the issuance of the mandate, which has no effect on the right to petition.] (See Rule 13 of the Rules.)

**Fees.** Either the $300 docketing fee or a motion for leave to proceed in forma pauperis with an affidavit in support thereof must accompany the petition. (See Rules 38 and 39.)

**Authorized Filer.** The petition must be filed by a member of the bar of the Supreme Court of the United States or by the petitioner representing himself or herself.

**Format of a Petition.** The Rules are very specific about the order of the required information and should be consulted before you start drafting your petition. (See Rule 14.) Rules 33 and 34 should be consulted regarding type size and font, paper size, paper weight, margins, page limits, cover, etc.

**Number of Copies.** Forty copies of a petition must be filed unless the petitioner is proceeding in forma pauperis, in which case an original and ten copies of the petition for writ of certiorari and of the motion for leave to proceed in forma pauperis. (See Rule 12.)

**Where to File.** You must file your documents at the Supreme Court.

**Clerk**
**Supreme Court of the United States**
**1 First Street, NE**
**Washington, DC 20543**
**(202) 479-3000**

No documents are filed at the Federal Circuit and the Federal Circuit provides no information to the Supreme Court unless the Supreme Court asks for the information.

**Access to the Rules.** The current rules can be found in Title 28 of the United States Code Annotated and other legal publications available in many public libraries.

Revised December 16, 1999